OPINION
This is an appeal from the judgment entry of divorce and final shared parenting decree by the Lake County Court of Common Pleas, Domestic Relations Division, in which appellant, Eloise C. Glass, and appellee, Ian S. Glass, were granted a divorce.
The parties were married on November 19, 1977 and three children were born during their marriage. Appellee filed for divorce on June 17, 1997. An amended shared parenting plan signed by both parties was filed with the court on July 9, 1998. This matter came on for hearing before a magistrate in July 1998 and concluded in August 1998.
The magistrate issued a report and recommendation for the grant of divorce on October 22, 1998. The marital property was distributed as follows: Appellant received approximately $494,300 in marital property, including the marital residence located in Mentor, Ohio (referred to as "the Lakeshore property") while appellee received approximately $346,550 in marital property, including a residence located in Chesterland, Ohio (referred to as "the Barfield property"). Appellant had to issue appellee a promissory note secured with a mortgage deed on the marital property in the amount of $126,433.54.
Appellee was to assume the following martial debts: one-half of the equity line of credit on the Lakeshore property totaling $58,901.90 and the total mortgage on the Barfield property totaling $170,000. Appellant was responsible for: one-half of the equity line of credit for the Lakeshore property totaling $58,901.90 and the mortgage on the Lakeshore property totaling $49,882.92. Various stocks, bank accounts, IRA, 401(K) and retirement accounts were divided equally between the parties.
No child support was granted to appellant but appellee was ordered to pay spousal support as follows: $3,000 per month for twelve months; $2,500 per month for the next twenty-four months, and $1,000 per month for the next twenty-four months. Under the terms of the shared parenting plan, care and control of the children was to be shared by the parties. Each party was ordered to be responsible for paying their own attorney fees.
Both parties filed objections to the magistrate's decision with the trial court. Appellee filed his objections on November 5, 1998 and February 9, 1999 while appellant filed her objections on November 12, 1998 with a request to file more specific objections at a later date. Appellant, however, never did so.
On March 26, 1999, the trial court denied all the objections except appellee's objection to the magistrate's failure to give an offset for the $30,000 of jewelry awarded to appellant. The proposed judgment decree of divorce and shared parenting decree sent by appellee to appellant was rejected by appellant. However, appellant never filed her own proposed judgment entry of divorce.
The trial court issued its judgment entry of divorce and final shared parenting decree on July 20, 1999 wherein the court adopted the magistrate's decision and also granted appellee an offset for the value of the jewelry awarded to appellant. From this judgment appellant appeals and asserts seven assignments of error for our consideration:
 "[1.] The trial court abused its discretion in determining the duration and amount of spousal support.
 "[2.] The trial court abused its discretion and erred as a matter of law in not awarding defendant-appellant child support.
 "[3.] The trial court erred as a matter of law in granting plaintiff-appellee a setoff for the value of jewelry gifted to defendant[-]appellant.
 "[4.] The trial court abused its discretion in failing to award defendant-appellant attorney fees and costs.
 "[5.] The trial court abused its discretion and erred as a matter of law in refusing to allow an award of temporary spousal and child support to defendant-appellant."
 "[6.] The trial court erred as a matter of law in failing to order plaintiff-appellee to continue paying the mortgages onthe [sic] Lakeshore property until spousal support commenced.
 "[7.] The trial court abused its discretion in ordering defendant-appellant to pay one-half the home equity line and in failing to provide for a method of payment as between the parties."
In her first assignment of error, appellant challenges the award of spousal support. Although appellee suggests that appellant is barred from asserting this argument because it was not raised with particularity before the trial court, this argument is baseless. In relevant part, Civ.R. 53(E)(3)(b) states that "[o]bjections shall be specific and state with particularity the grounds of objection."
We determine that appellant, in essence, complied with Civ.R. 53(E)(3)(b) because her objection to the award of spousal support restates pertinent facts of the case.[1] Harbin v. Chris T.V. (June 22, 1990), Lake App. No. 89-L-14-101, unreported, at 1, 1990 WL 86264 (holding that objections restating pertinent facts of the case in objection form were sufficient to meet the requirement of specificity and particularity).[2]
It is well-established that the trial court enjoys broad discretion in awarding spousal support to either party when it is "appropriate and reasonable" to do so. R.C. 3105.18(C)(1); Clontz v. Clontz (May 16, 1997), Trumbull App. No. 96-T-5531, unreported, at 3, 1997 WL 286093.[3]
Such an award will not be disturbed on appeal absent an abuse of discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. To constitute an abuse of discretion, the trial court's determination must have been unreasonable, arbitrary or unconscionable. Moore v. Moore
(1992), 83 Ohio App.3d 75; Kahn v. Kahn (1987), 42 Ohio App.3d 61, 65;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Turning to the substance of appellant's first assignment of error, she maintains that the trial court failed to consider appellee's income other than from wages and failed to project his expected earning capacity when awarding the spousal support to appellant. Specifically, appellant claims that the $3,000/$2,500/$1,000 per month award, graduated over five years, is too little.
R.C. 3105.18(C)(1) provides a list of factors to be considered by the trial court before making a spousal support award, including, but not limited to the following: (1) the incomes of the parties; (2) the relative earning abilities of the parties; (3) the ages and the physical, mental, and emotional conditions of the parties; (4) the duration of the marriage; (5) the standard of living the parties established during their marriage; and (6) any other factor that the trial court finds relevant and equitable. R.C. 3105.18(C)(1)(a)-(n).
A review of the record reveals the parties stipulated on the record that appellee's annual gross earned income was $235,000.[4] This income was broken down into two separate amounts. He received a salary of $185,000 as a practitioner of internal medicine for Meridia Hospital System ("Meridia") and a salary of $50,000 for administrative work as being the Medical Director for Meridia Health Plan. The latter income could rise by 30 percent, depending upon performance. Although appellee made reference to monies received from a study done on patients, these studies occurred infrequently.
Through Meridia, appellant was entitled to various education expense reimbursements in the amount of $5,500 annually. However, the magistrate specifically found that "[n]one of the assets distributed to the parties in property division are of an income-producing type" and the trial court adopted this finding. Such a finding indicates that the magistrate indeed considered "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code[.]" R.C.3105.18(C)(1)(a).
As for appellant's claim that the trial court erred when it failed to project appellee's future expected earning capacity, this argument is also without merit. Despite the testimony that his $50,000 salary could rise by 30 percent, the court is not required to speculate, especially when there was no expert or specific testimony on this issue.
Next, appellant maintains that she is unable to enjoy the standard of living comparable to that established during the marriage in that the trial court failed to place her in parity with appellee.
We agree that an award of spousal support must be equitable. Bucklesv. Buckles (1988), 46 Ohio App.3d 102, 110. An equitable result requires that "[t]o the extent feasible, each party should enjoy, after termination of marriage, a standard of living comparable to that established during the marriage as adjusted by the various factors" of R.C. 3105.18. Buckles at 110. The Buckles court went on to define "parity" as follows:
 "`Parity,' * * * does not mean `mathematical equality,' but rather, `equitable equality,' and relates not to the relative standard of living of the parties but instead to the relationship of the post divorce-decree standard of living of each party with the standard of living established during the marriage. `Parity' is not a synonym of `equality[.]' * * * However, neither party is entitled to a sustenance alimony award to enable him or her to enjoy a standard of living higher than that enjoyed during the marriage." Id. at fn. 4.
Furthermore, the court realized:
 "The starting point is to place both parties on a parity with the marriage standard of living (not necessarily equality) after divorce considering all the factors of R.C. 3105.18. `Parity' * * * is necessarily an equitable term meaning essentially `equitably' equal rather than `mathematically equal.' Parity may be accomplished by an award of sustenance alimony or of property-division alimony, lump-sum alimony, or a combination of these. R.C. 3105.18 does not contemplate that, in the absence of extraordinary circumstances, one party after termination of a marriage will enjoy the same or higher standard of living while the other party is forced to live on a greatly reduced standard of living from that established during the marriage, where the marriage is one of long duration. The standard of living established during the marriage is the highest, but not the lowest standard to be utilized in determining need for sustenance alimony. However, equality of the standard of living between the parties is not necessarily required." (Footnote omitted and emphasis added.) Id. at 110-111.
 In reaching parity, R.C. 3105.18(C) requires the trial court to consider all its enumerated factors, with the duration of the marriage and the earning abilities of the parties being of prime significance. Id. at 111.
 "[A]lthough R.C. 3105.18 does not specifically require a spousal support award to provide the parties with an equal standard of living, equity requires that a disadvantaged spouse receive sufficient spousal support to bring him or her up to a reasonable standard of living, in light of the standard maintained during the marriage." Glass v. Glass (June 30, 2000), Trumbull App. No. 99-T-0045, unreported, at 8, citing Addy v. Addy (1994), 97 Ohio App.3d 204, 208.
 In general, a spouse who was in a long-term marriage, who is older, or who has not had the opportunity to develop a career outside of the home is entitled to receive spousal support from the other spouse. Clontz at 4, citing Kunkle at paragraph one of syllabus. However, an order of spousal support should terminate within a reasonable time where the payee spouse has the resources, ability and potential to be self-supporting. Kunkle at paragraph one of the syllabus.
Here, there was a marriage of long duration of over twenty years. While appellee is making an annual gross earned income of $235,000, appellant is not without the ability and education to also achieve a meaningful earning capacity. Specifically, she earned a bachelor degree in biology and a law degree from Cleveland-Marshall College of Law in 1993. Further, appellant was admitted to the practice of law in the state of Ohio in November 1994, and is still a licensed attorney.
It was recognized by the magistrate that appellant was "significantly underemployed." There was considerable dispute as to why this was so. Appellant's legal career to date had consisted of using her qualifications and skills to give advise at a free clinic and to represent friends in court. Thus, although appellant has a legal education and is a licensed attorney in Ohio, she is at most qualified for an entry-level legal position. The magistrate recognized this lack of experience and only imputed $15,600 of income to appellant.
We conclude that the trial court considered all the factors set forth in R.C. 3105.18(C)(1) in making the spousal support award. The magistrate also determined that appellant's affidavit of monthly expenses was $500 too high as the Saab automobile had been paid off. Hence, appellant's expenses were determined to be $4,354 per month, even though the magistrate found her testimony as to these expenses to be vague. Further, in addition to the award of spousal support, appellant was awarded a significantly greater amount of marital property and monies.
Accordingly, there was no abuse of discretion in the trial court's five year award of spousal support to appellant. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, she challenges the trial court's decision not to award her child support. In this assignment of error, appellant makes numerous arguments, and we will address each one individually.
First, appellant maintains that the court failed to comply with R.C.3113.215 and abused its discretion in computing appellee's child support obligation based only on his two salaries. According to appellant, the trial court failed to consider evidence that one of appellee's salaries could increase by 30 percent and that he could receive bonuses or reimbursements when it computed child support. Further, appellant suggests that the trial court failed to consider certain income tax returns which report interest, dividends and rental income, as well as capital gains income from the purchasing and selling of stocks.
R.C. 3113.215 governs calculation of the amount of child support obligation and section (A) defines "income" as gross income or the potential income of an unemployed or underemployed parent. "Gross income" means:
 "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses * * * commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, * * * and potential cash flow from any source." (Emphasis added.) R.C. 3113.215(A)(2).
A party's tax returns are a proper reference point to aid in calculating that party's income, though other relevant factors also must be evaluated. Houts v. Houts (1995), 99 Ohio App.3d 701, 706. However, the magistrate also noted that the various non-salary valuations provided were "scattershot" and that "the retirement accounts will continue to generate funds and the shares of stock distributed may pay small dividends; however, the foregoing are unavailable to the parties without penalty and the latter, if any, are small."
As we mentioned earlier, the record reveals that for child support purposes, the parties stipulated to the fact that appellee's annual gross earned income was $235,000. Accordingly, the magistrate computed child support based on $235,000.
Second, appellant continues to posit that the court had not complied with R.C. 3113.215(B)(2)(b) in that the court did not consider the needs and the standard of living of the children and the parents.[5]
Specifically, appellant suggests that the trial court failed to follow the appropriate statutory requirements in calculating support for parents with combined incomes over $150,000.00.
R.C. 3113.215(B) provides, in relevant part, as follows:
 "(2) In determining the amount of child support to be paid under any child support order, the court, upon its own recommendation or upon the recommendation of the child support enforcement agency, shall or the child support enforcement agency, pursuant to sections 3111.20, 3111.211, and 3111.22 of the Revised Code, shall do all of the following:
"* * *
 "(b) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court or agency shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. * * *"
At the hearing, the magistrate found that certain household expenses listed by appellant included, but were not limited to, entertainment, clothing for herself and the children, groceries, housekeeping, insurance, vehicle, and utilities. Appellant's projected total house expenses were $4,437, not including taxes. The award the first year was $3,000 per month. The yearly income projected to appellant was $15,600 or $1,300 per month. Thus, the magistrate apparently calculated that appellant would have at least $4,300 each month to meet her "vague" monthly expenses of $4,437.
Based on the testimony and the evidence presented to the court below, this court determines that the trial court considered evidence as to the needs and standard of living of appellant's children and herself.
Third, appellant challenges the trial court's deviation from the child support guidelines. She claims that the court below failed to consider the disparity in income between the parties, the relative financial resources and needs of each parent, and the standard of living and circumstances of each parent as required by R.C. 3113.215(B)(3)(g), (k), and (l). Additionally, appellant contends that the trial court erred in its finding that an elimination of child support was in the best interest of the children when she is having difficulty maintaining adequate housing for the children. Appellant states in her brief:
 "How can it possibly be in the children's best interest to assure their attendance at private school at the expense of [d]efendant-[a]ppellant being able to provide for such basic needs as housing, food, and clothing when in her care."
 A deviation must be predicated upon specific findings concerning the best interests of the child and the inappropriateness of the guideline amount. R.C. 3113.215(B)(3). As stated by the Supreme Court in Marker v. Grimm (1992) 65 Ohio St.3d 139, 143, R.C. 3113.215 was aimed at "protect[ing] Ohio's children from insufficient and inequitable child support orders."
The terms of R.C. 3113.215 are mandatory and "must be followed literally and technically in all material respects. Further, any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Marker at 143. Failure to do so is reversible error. Gatliff v. Gatliff (1993),89 Ohio App.3d 391.
In this case, the magistrate's decision, which was adopted by the trial court, indicates that:
 "the [m]agistrate has calculated child support according to the guidelines, all as set forth on the child support guidelines worksheet * * *. According to this calculation, husband's [appellee] child support obligation is $1,101.41 per month per child. Based on the evidence presented and as set forth on Exhibit 2, * * * the [m]agistrate recommends a deviation to the amount of $-0- per month per child."
As further set forth in the child support deviation findings of fact and conclusion of law, the magistrate, as well as the trial court, recommended a deviation to an amount of $0 per month, per child, because, as stipulated by the parties, the obligor/appellee, was voluntarily paying the private school tuition for the children in the amount of $1,177.50 per month per child for a total of $3,532.50 per month [$1,177.50 x 3 children = $3,532.50]. Additionally, appellee was providing transportation and automobile insurance for the children, along with maintaining and paying costs associated with their sailing boats.[6]
Further, appellee had possession of the children for 50 percent of the time, and the magistrate found that the value of the in-kind school costs contribution was $1,177.50 per month per child for a total of $3,532.50 per month. Based upon these facts and circumstances, the magistrate, along with the trial court, found that it would be unjust and/or inappropriate and not in the best interest of the children to apply child support per the statutory schedule and thus, deviation was appropriate.
The record in this case reflects that the trial court made the required finding that deviation from the child support guidelines was in the best interest of the children. The court below explained how it arrived at the figure used to deviate from the calculated child support. Further, the court may consider whether the obligor-parent subject to the child support order makes significant in-kind contributions, such as "direct payments for lessons, sports equipment, schooling, or clothing[.]" R.C.3113.215(B)(3)(j). In contemplating a deviation, a court may consider "[t]he need and capacity of the child for an education and the educational opportunities that would have been available to him had the circumstances requiring a court order for support not arisen[.]" R.C.3113.215(B)(3)(n). Again, we note that it was only the school tuition which was considered by the magistrate and court.
Therefore, it was proper for the trial court to consider the fact that appellee was paying private school tuition for the three children, in the amount of $1,177.50 per month per child. The trial court did not abuse its discretion and properly considered the best interest of the children in its deviation from the child support guidelines.
Finally, under the second assignment of error, appellant claims that the trial court failed to order appellee to continue to make in-kind contributions for private school tuition and sailing expenses for the children.
As indicated earlier, Civ.R. 53(E)(3)(b) states in pertinent part that:
 "Objections shall be specific and state with particularity the grounds of objection. * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
An examination of appellant's objections to the magistrate's decision dated November 12, 1998 indicates that she made no reference to the magistrate's failure to recommend that appellee continue to make in-kind contributions. In Emerson v. Emerson (Apr. 9, 1999), Montgomery App. No. 17312, unreported, at 7-8, 1999 Ohio App. LEXIS 1565, the Second Appellate District realized that:
 "An `invitation' to a trial court to search the record for deficiencies in a document does not constitute the specific statements, with particularity, of objections required by Civ.R. 53(E)(3). Therefore, we decline to address any issues not specifically raised at the trial level." (Citation omitted.)
Although appellant made an objection as to the magistrate's failure to recommend that appellee pay her any child support, no specific or particular objection was made with regards to the continuation of in-kind contributions. Civ.R. 53(E)(3)(b) requires a party to make specific objections to a magistrate's decision, "and the failure to object * * * constitutes a waiver on appeal of any matter that could have been raised by objection." White v. White (Mar. 3, 1998), Scioto App. No. 97 CA 2511, unreported, at 4, fn. 2, 1998 WL 101353. Thus, appellant has waived her right to raise this issue on appeal. Regardless, the trial court always has the jurisdiction to determine if a change of circumstances has occurred in reference to child support. Appellant's second assignment of error has no merit.
Turning to the third assignment of error, appellant contends that it was improper for the trial court to grant appellee a setoff for the value of the jewelry gifted to appellant. Here, appellee specifically objected to the magistrate's failure to give him an offset for the $30,000 of jewelry awarded to appellant. The trial court found this objection to be well-taken, and the final entry of divorce granted appellee an offset for the value of the jewelry.
Appellant directs our attention to the testimony of appellee during the hearing where he stated that all the jewelry given to her by him during the marriage were gifts, thus, separate rather than marital property. In turn, appellee argues his testimony stating that the jewelry was a gift was insufficient evidence to prove that the jewelry constituted separate property.
An inter vivos gift occurs when the donor executes "an immediate voluntary, gratuitous and irrevocable transfer of property" to the donee. Smith v. Shafer (1993), 89 Ohio App.3d 181, 183. "The essential elements of an inter vivos gift are as follows: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control of the property." Frederick v. Frederick (Mar. 31, 2000), Portage App. No. 98-P-0071, unreported, at 7, 2000 WL 522170. Accordingly, if any of these elements are not satisfied, the gift as a whole fails. Frederick at 7.
Further, R.C. 3105.171(A)(6)(a)(vii) provides that a gift acquired by either spouse during the course of the marriage is presumed to be marital property unless it is shown by clear and convincing evidence to have been intended by the donor to be the exclusive property of the recipient spouse, i.e., a gift.[7] Barkley v. Barkley (1997), 119 Ohio App.3d 155,168. "Clear and convincing evidence" has been defined as "that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." (Citations omitted.) Barkley at 168-169. Thus, appellant, as the donee spouse seeking to have the jewelry deemed separate property in this case, bore the burden of proof on this issue. Id. at 168. Nevertheless, she can satisfy this burden by relying on evidence produced by appellee. For the gift to be considered separate property there must be evidence that the donor spouse intended to give up any interest he/she may have had in the property.
In the instant case, the following testimony by appellee is relevant:
 "Q. During your marriage to Eloise, [appellant] did you give her any gifts?
"A. Jewelry.
"Q. Which jewelry did you give her?
"A. All of her jewelry.
"Q. Okay. Did you give her any paintings?
"A. No.
"Q. Did she give you any gifts during the marriage?
"A. I'd say I got some luggage from her.
"Q. Is that all, Doctor, just luggage?
"A. That I can remember right now."
There was unequivocal testimony that the jewelry was a gift. There was no testimony that the jewelry was not intended as a gift. We view that to be clear and convincing evidence that the jewelry was given as a gift as required by R.C. 3105.171(A)(6)(a)(vii). "[W]hen a spouse transfers property to the other spouse, the transfer is presumed to be a gift unless it is shown to the contrary." Barkley at 160. Rather, the jewelry was the separate property of appellant and not subject to division in the divorce proceeding. Natto v. Natto (Mar. 26, 1993), Ashtabula App. No. 92-A-1700, unreported, at 3, 1993 WL 130120.). Accordingly, the trial court erred in granting appellee a setoff for the value of the jewelry, and appellant's third assignment of error is well taken.
Under the fourth assignment of error, appellant suggests that it was improper for the trial court to not award attorney fees to appellant. In response, appellee posits that appellant failed to place sufficient facts into the evidence to warrant an award of attorney fees and failed to timely file the request for attorney fees. Appellant counters this argument by claiming that appellee agreed to waive any defects in procedure.
The record indicates that on July 8, 1998, the parties entered into a stipulation wherein they agreed to "hereby waive any defects in procedure and agree to proceed to trial despite neither party having exchanged witness or exhibit lists." (Emphasis added.)
The following exchange is relevant to this issue:
 "Mr. Bosco [attorney for appellant during the hearing]: The only other thing I have, your Honor, is the attorney fees which I filed a motion for.
"* * *
"The Court: It was filed as a matter of record.
 "Ms. Dray [attorney for appellee]: It was filed and it was filed out of rule; it was not filed timely. It was not filed 7 days before the start of the hearing. I did not receive it 7 days before as required by rule.
 "Mr. Bosco: Again, I'll remind Ms. Dray that we made a stipulation
 "Ms. Dray: That's got nothing to do with the stipulation. The rule is real clear about what is required in terms of asking for attorney fees. They were not filed timely.
 "Mr. Bosco: Your Honor, I will mark the motion and ask the Court
 "The Court: The motion's a matter of record in the file if it was filed.
 "Mr. Bosco: I believe I complied with the local rules. If Ms. Dray wishes to ask me any questions regarding the itemized attorney fees bill which I submitted as part of the motion, otherwise I would just testify, your Honor, the merits of my as to my qualifications.
 "The Court: All right. Proceed; [sic] and if Ms. Dray has any questions in cross, she may, of course, ask them.
 "Mr. Bosco: My name is John W. Bosco, my office address is it
 "Ms. Dray: Your Honor, I will stipulate to whatever he had there. I will stipulate to it for what it's worth.
 "Mr. Bosco: And we rest, your Honor, subject to the admission of the exhibits.
 "Ms. Dray: Again, for the record, I would argue that this was not submitted timely." (Emphasis added.)
Appellant filed her request for attorney fees on July 27, 1998 wherein she provided an itemized statement of services covering attorney fees accrued during the litigation of the instant matter totaling $14,795.50. However, no affidavit was attached averring to the fact that the fees were reasonable.
Appellee filed this same request on August 13, 1998 wherein he attached an affidavit stating that the hourly fee charged did not exceed that customarily charged in Lake County for legal services relating to domestic relations matters. Apparently for purpose of comparison, an itemized list, which detailed the hours and nature of services rendered to appellee, was attached. Appellee's attorney fees totaled $11,234.50.
Upon review of the record, it is apparent that appellee agreed to waive any defects in procedure. Thus, appellee's untimely filing argument is baseless. Further, appellee's counsel effectively "derailed" appellant's counsel's attempt to further elaborate on the foundation for the fee statement by "stipulating" to it. It is apparent that counsel's objection only focused on timeliness of the exhibit not the correctness of the amount of the fees claimed.
Turning to the appropriate standard of review, "[t]he general rule is that the decision whether to award attorney fees is [a] matter within the sound discretion of the trial court." Frederick at 25. Absent a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court. Birath v. Birath (1988), 53 Ohio App.3d 31, 39.
R.C. 3105.18(H) is applicable to situations where a party requests attorney fees in a divorce proceeding. It states in pertinent part:
 "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." R.C. 3105.18(H).
Before the trial court may award attorney fees to a party, it must consider two distinct factors:
 "(1) the court must ascertain whether the other party has the ability to pay the requesting party's attorney fees; and (2) the court must consider whether either party will be prevented from fully litigating his or her rights and adequately protecting his or her interests if it does not award reasonable attorney fees." Frederick at 25.
Further, "[a]n allowance for the payment of attorney fees is generally designated as a type of spousal support in light of the fact that the relevant statutory authority is subsumed within R.C. 3105.18." Id.
In addressing the request for payment of attorney fees by each party, the following was acknowledged by the magistrate:
 "Considering the equal division of assets between the parties recommended above, and the spousal support herein ordered, the [m]agistrate finds that neither of said motions [for attorney fees] is well-taken, and that it is fair and reasonable under the circumstances that each of the parties should be responsible for payment of his/her attorney fees incurred herein."
Subsequently, the trial court adopted this reasoning as its own.
Upon review, we believe that the trial court did not abuse its discretion in ordering each party to pay his or her own attorney fees. Although appellant proposes that appellee's income far exceeds appellant's and thus he has a "superior income and ability to pay" while appellant is unemployed and without sufficient resources to pay attorney fees, she ignores income sources that she is entitled to under the divorce decree and the use of which would not have significant tax penalties. Specifically, each party was permitted by the trial court to withdraw any amount up to $100,000 from the University Mednet Physicians Trust 401(K) account for the purpose of paying their individual debts without early withdrawal penalties pursuant to IRS regulations. The fourth assignment of error lacks merit.
In the fifth assignment of error, appellant sets forth the proposition that the trial court abused its discretion when it refused to allow an award of temporary spousal and child support.
As a preliminarily matter, certain procedural matters should be outlined. First, the magistrate's decision was issued on October 22, 1998. Objections to the magistrate's decision were filed by appellant on November 12, 1998. Then on November 13, 1998, appellant filed a motion for interim order requesting that the trial court enter an interim order requiring appellee to pay her at least $3,000 because she was unable to pay the bills or support the children. Thereafter, a motion for child and spousal support pendente lite was filed by appellant on December 9, 1998. In a March 26, 1999 judgment entry, the trial court specifically referred these matters back to the magistrate for consideration.
Finally, in an April 23, 1999 decision, the magistrate dismissed the motion for interim order as being moot pursuant to Civ.R. 53(E)(4)(c). The motion for pendente lite child and spousal support was likewise dismissed as being untimely and moot. Appellant filed her objection to the magistrate's decision dismissing the above-mentioned motions on May 11, 1999, and appellee filed a motion to dismiss the objection on May 18, 1999. Subsequently, the trial court issued a judgment entry dated July 1, 1999 dismissing appellant's objection as being untimely. R.C.3105.18(B).
It is uncontroverted that under Civ.R. 53(E)(3)(a), once the magistrate has filed her decision in a given matter, a party has fourteen days to file written objections. The record reveals that the magistrate filed her decision on April 23, 1999, which gave appellant until May 7, 1999 to file any and all objections she had to that decision.
Appellant, however, did not file her pro se objections until May 11, 1999. Even if it were proposed that the clerk did not issue a copy of the decision to the parties until April 26, 1999, as the record reflects, the expiration date for filing an objection would have been May 10, 1999. In either instance, appellant's objections to the magistrate's decision dismissing her motions for spousal and child support were still untimely. It is irrelevant that appellant's attorney had filed a motion to withdraw as her attorney. The directive is jurisdictional not discretionary. Thus, there was not only no abuse of discretion but, as a matter of law, the trial court's decision was correct. This issue in the fifth assignment is without merit.
Under the sixth assignment of error, appellant contends that the trial court erred in failing to order appellee to continue to pay the mortgages on the marital property until spousal support payments commenced. By failing to order appellee to meet the mortgage payments after refusing to grant the motion for interim order and motion for temporary support, appellant suggests that the trial court abused its discretion and placed her in an impossible financial situation.
The record demonstrates that appellant did not make a specific objection or factual reference to the court below as required by Civ.R. 53(E)(b). Habin at 1. Therefore, it is not properly before this court, and we will not address this assignment of error on appeal.
In the last assignment of error, appellant challenges the trial court's order requiring her to pay one-half of the home equity line on the marital home on the basis that the court failed to provide her with a sufficient amount of spousal support to meet that obligation. Based on her other monthly expenses and her current level of income, appellant suggest that she is not able to pay one-half of the equity line of credit.
Our scope of review is limited to whether the trial court abused its discretion. Marvin v. Marvin (Feb. 7, 1997), Portage App. No. 96-P-0185, unreported, at 2, 1997 WL 123914, citing Terry v. Terry (1994),99 Ohio App.3d 228, 232. In the case at bar, appellant was awarded the $425,000 marital home. Appellant was also ordered to pay the first mortgage on this marital residence in the amount of approximately $49,882.92, along with one-half of the equity line balance of approximately $58,901.90. However, appellant is also to receive a significant amount of other assets and funds. Thus, we find no abuse of discretion by the trial court in its decision to make appellant responsible for one-half of the home equity line of credit. The last assignment of error is not well-taken.
Based on the foregoing analysis, appellant's third assignment of error is well-taken while the remaining assignments of errors lack merit. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and we remand the matter for further proceedings consistent with this opinion.
 __________________________ JUDITH A. CHRISTLEY, JUDGE
FORD, P.J., NADER, J., concur.
[1] The following objections were made by appellant in her November 12, 1998 objections to the magistrate's decision: (1) object to the magistrate's failure to order appellee to pay her any child support even though it was found that the children are in her care and custody 50 percent of the time; (2) object to magistrate's determination of spousal support even though the magistrate found that appellee earns $235,000 per year while appellant was qualified to earn $15,600 per year and her expenses total $4,354 per month; (3) object to the magistrate's failure in ordering appellee to pay appellant's attorney fees given the fact that appellee's disposable income far exceeds appellant's income; and (4) object to appellant being ordered to pay 50 percent of the line of credit on the marital home because those funds were partially used to support appellant and the children during the pendency of this action.
[2] Harbin refers to Civ.R. 53(E)(2) which stated at the time "`* * * [o]bjections shall be specific and state with particularity the grounds thereof * * *.'" Harbin at 1.
[3] R.C. 3105.18 was revised on January 1, 1991. Houck v. Houck (Dec. 26, 1997), Trumbull App. No. 97-T-0025, unreported, at 5, fn. 5, 1997 WL 800923. R.C. 3105.18(B), renumbered as R.C. 3105.18(C)(1), removed the term "necessary" and substituted it with the phrase "appropriate and reasonable" in relation to the determination of spousal support. Thus, a trial court may award spousal support to either party when it is "appropriate and reasonable" to do so.
[4] The following exchange took place regarding the stipulation:
 "The Court: * * * "For guideline purposes, do we have stipulations that husband has an annual gross earned income of $235,000.00, that he will be paying that he is paying tuition where are we we're in July for the coming year, the `98/'99 school year for the three boys in the amount of $42,390.00; that husband has a $4,700.00 city tax liability and a car insurance cost that he's paying for the boys of an annual $3,200.00.
 "Mr. Bosco [attorney for appellant]: Your Honor, we don't stipulate to that at all.
"The Court: What part of it or any of it?
"Mr. Bosco: No. The car insurance.
"* * *
 "The Court: Do you stipulate to the salary, the tuition and the city tax amounts that I read off?
"Mr. Bosco: Yes."
[5] In appellant's brief, she cites to R.C. 3113.215(B)(2) whereas the more precise citation is R.C. 3113.215(B)(2)(b).
[6] No specific dollar amount was stated for these non-school activities.
[7] R.C. 3105.171(A) is relevant to this matter and provides, in pertinent part:
 "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be of any of the following:
"* * *
 "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
Moreover, R.C. 3105.171(D) sets forth the general rule that separate property is not subject to division in a divorce proceeding.