**GATLIFF, Appellant,**

v.

**GATLIFF, Appellee.**

[Cite as *Gatliff v. Gatliff* (1993), 89 Ohio App.3d 391.]

Court of Appeals of Ohio,
Hancock County.

No. 5-93-4.

Decided Aug. 23, 1993.

*Rizor, Minnard, Rizor & Golden Co., L.P.A.,* and *Lawrence R. Minnard,* for appellant.

*Snyder, Alge & Welch* and *Daniel M. Snyder,* for appellee.

EVANS, Presiding Judge.

This is an appeal from a judgment of the Court of Common Pleas of Hancock County granting the motion of Robert F. Gatliff for a modification of child support and visitation pursuant to that court's local rules, which control such matters when parents reside more than one hundred fifty miles apart.

Sheryl K. Gatliff (appellant) and Robert F. Gatliff (appellee) were divorced on October 6, 1986. The divorce order provided that appellant was the residential and custodial parent of the parties' two minor children, and she has remained so since the divorce. An order of child support was entered for the benefit of the children, and was modified pursuant to motion on January 23, 1989.

After moving to Texas in September 1992, appellee filed a motion in the Court of Common Pleas of Hancock County requesting a modification of visitation and child support pursuant to the court's local rules regarding "long-distance parenting." On January 6, 1993, the court entered its order granting the motion and adopting the referee's report, which had been issued following a hearing on November 24, 1992.

The relevant local rules of the Hancock County Common Pleas Court provide, as follows:

"RULE 2.23  CHILD SUPPORT DURING VISITATION

"Unless otherwise stated in a judgment entry granting child support, such support shall continue on a weekly basis during the first week (seven consecutive days) of Court ordered or agreed upon visitation. After the expiration of the first week of Court ordered or agreed upon visitation, child support shall not be due and payable to the residential parent during any subsequent full week that such Court ordered or agreed upon visitation continues."

"RULE 2.33  LONG DISTANCE VISITATION SCHEDULE

"The Long Distance Parenting Plan and Companionship Schedule of the Court is found in Appendix K."

Appendix K sets forth a detailed visitation schedule, to be applied "for parents who live more than 150 miles apart." The plan is comprehensive, and provides for various options.

In this case, the referee recommended application of the visitation plan, modified to comply with the requests and needs of the parties and their children. Following the local rule, the referee recommended a summer visitation of nine consecutive weeks, and other periods of visitation as set forth in Appendix K. He further recommended that the parties divide the costs of transporting the children from one residence to the other, purportedly on a pro rata basis according to the child support guidelines of the Revised Code, coming up with a seventy/thirty percent allocation which he thought "equitable," based (inexplicably) on the parties' incomes *before* allocation of child support payments. The requisite Child Support Computation Worksheet was not included in the record.[1] The referee also recommended, pursuant to Loc.R. 2.23, that appellee's child support payments be suspended for eight weeks each summer when the children were visiting with him. The trial court overruled appellant's objections to the referee's report and issued an order adopting the report, in toto. Although appellant has no complaint with the "Appendix K" visitation order, she has appealed the court's order suspending support payments during summer visitation and ordering her to pay thirty percent of the children's transportation costs to and from Texas. She asserts three assignments of error.

First and Second Assignments of Error

"Local Rule 2.23 of the Hancock County Common Pleas Court's Rules of Court is an abuse of discretion and contrary to law.

"The trial court erred in the application of Local Rule 2.23 of the Hancock County Common Pleas Court's Rules of Court to the facts of this case in ordering an abatement of child support during the extended times of visitation."

Appellant complains that the trial court erred in following its own Loc.R. 2.23, in that the rule contravenes Ohio law regarding child support. In *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the Supreme Court of Ohio addressed R.C. 3113.215, as follows:

"R.C. 3113.215(B)(1) requires that a calculation of the amount of an obligor's child support obligation must be made 'in accordance with' the basic child support schedule set forth in R.C. 3113.215(D), the applicable worksheet in R.C. 3113.-215(E) or (F), and other requirements of the law. * * * R.C. 3113.215(B)(1) further provides that the amount calculated using the schedule and worksheet (through line 18 of the worksheet) is 'rebuttably presumed' to be the correct

---

1. The calculations under the statutory guidelines, given the numbers provided by appellant, indicate that the parties' incomes are disparate: after appellee's payment of the guideline amount of support, appellant's household income would be approximately forty-eight percent of appellee's. However, with suspension of appellant's guideline support payments for eight weeks out of the year, appellee's household income would be further reduced by approximately $1,600, resulting in even more disparity in the incomes.

amount of child support due and that that amount must be ordered to be paid *unless* both of the following apply:

" '(a) The court, after considering the factors and criteria set forth in division (B)(3) of this section, determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, would be unjust or inappropriate and would not be in the best interest of the child.

" '(b) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and *findings of fact supporting that determination.*'

"Thus, the acceptable procedure for ordering an amount of child support which deviates from the amount 'rebuttably presumed' to be the correct amount due is for the court to *fully* comply with the requirements of R.C. 3113.215(B)(1)(a) and (b). The importance of strict compliance with these deviation procedures becomes all the more apparent upon a reading of R.C. 3113.215(B)(2)(c) and, specifically, R.C. 3113.215(B)(2)(c)(i) and (ii), which repeat, verbatim, the requirements of R.C. 3113.215(B)(1)(a) and (b)." (Emphasis added in part.) *Id.,* 65 Ohio St.3d at 141, 601 N.E.2d at 497–498.

The court continued its discussion by pointedly noting that the "overriding concern of the law," as evident from the statutory scheme, is the best interest of the child. Thus, indicated the court, the statute must be followed by the courts *to the letter.*

Obviously, then, a specific requirement of the statute, as noted in the Supreme Court's comment, *supra,* is that any deviation from the child support guidelines *must* be found to be *in the best interest of the children,* despite any obligor's claim of "unfairness." The court must support its determination *in each case* with proper findings of fact specifically justifying the deviation from the statute. As succinctly stated by the Supreme Court, since the statute was aimed at "protect[ing] Ohio's children from insufficient and inequitable child support," the terms of R.C. 3113.215 are mandatory and "must be followed literally and technically in all material respects. Further, any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." *Id.,* 65 Ohio St.3d at 143, 601 N.E.2d at 499.

We find that Loc.R. 2.23 of the Hancock County Common Pleas Court, as written, violates the purpose and intent of R.C. 3113.215. The rationale behind the rule, as expressed in the court's judgment entry, is arbitrary and unreason-

able when the order is applied without individualized consideration of the facts of each case. The judges' rationalization that it is generally "unfair" for *any* obligor to continue paying child support during the nine weeks' vacation period is untenable.

*All* visitation schedules provide for a given number of days throughout the year when an obligor has physical custody of the children. In this case, the court's "long distance" visitation schedule explicitly provides "the non-residential parent approximately 72–82 days each year to exercise parenting rights [visitation]." In consideration of the distance between the parties' residences, most of that time is concentrated during the children's summer vacation. The "typical" visitation schedule, however, provides a total of approximately eighty-five to one hundred thirty days of visitation per year for a non-custodial parent, as follows: Various holidays throughout the year (approximately eighteen to twenty days); alternating weekends throughout the year (approximately forty to forty-two days); one to four weeks' vacation in the summer (approximately seven to twenty-eight days); and, in many cases, one week-night and day each week when not otherwise provided for in the visitation schedule (approximately thirty to forty days).

Although, on occasion, requests for a temporary reduction in support payments may be granted in consideration of food and entertainment expenses during "extended" visitation periods, such reductions must be supported by the specific facts of each case which indicate that a reduction is in the best interest of the children. We are aware of no provision under Ohio law for suspension of child support payments during these visitation periods, whether they are weekly, biweekly, monthly, or for an extended period during summer vacation. See R.C. 3109.05 (providing that an obligor must continue to pay court-ordered support "during seasonal vacation periods"). As appellant argues, an obligee following a typical visitation schedule is relieved of the same array of parental responsibilities on a regular basis throughout the year as is an obligee/parent following the Hancock County "long distance" visitation schedule.

In denying obligors' requests for abatement or suspension of child support during visitations, courts have generally reasoned that, since an obligee's financial obligations for the children do not suddenly "abate" during times the children are with their obligor parent, a reduction in support is not in the children's best interest. An obligee who is maintaining a permanent home for her children on a minimal income, as appellee is in this case, must continue to provide such necessities as clothing, and to maintain the custodial residence, which requires such expenditures as mortgage payments, real estate tax payments, insurance payments, repair expenses, etc., even during the children's two-month visit with their father. Thus, while the court's "local rule" was explicitly promulgated in light of R.C. 3113.215(B)(3)(d), which allows the court to consider "extended times

of visitation or *extraordinary* costs associated with visitation" (emphasis added) when deviating from guideline support, this provision of the Revised Code does not relieve the court from its mandate to make the statutorily required findings of fact supporting such deviation.

Furthermore, the court's primary consideration, we reiterate, must be the best interest of the children. *Marker,* 65 Ohio St.3d at 141, 601 N.E.2d at 497; R.C. 3113.215(B)(1)(a) and (b). Although there may be circumstances wherein it would be "unjust" to require the full guideline support during visitation periods when the overall visitation days occur consecutively rather than dispersed throughout the calendar year, unfairness is not the ultimate statutory test for deviation from the statutory support guidelines.

Therefore, we conclude that, in light of the mandatory nature of R.C. 3113.215, although a common pleas court may institute local "guidelines" as an aid to determination of visitation and child support in difficult cases, it may not promulgate a rule which eliminates close scrutiny of each individual case and fact situation, as required by the law. The "local rule" challenged herein contains *mandatory* language, indicating that it is to be applied to *every case* wherein the parties live one hundred fifty miles apart, regardless of the varying facts and circumstances of each case. The court, in its journal entry, stated that the common pleas court has predetermined that the rule is "fair" in every such case. The decision to utilize the local rule regardless of the differences in each case is an arbitrary decision which fails to consider cases on an individual basis as required by the law of Ohio. As stated *supra,* each case must be appraised on its own merits, with proper consideration of and setting forth of facts and conclusions which justify, under the specific requirements of the sections and subsections of the statute, a deviation from the purpose, intent, and technical provisions of the statutory scheme. While the court may have intended Loc.R. 2.23 to be a mere "guideline," as contended by the concurrence herein, it is not framed as such, and was certainly not applied as such in this case. Accordingly, we sustain appellant's first and second assignments of error.

Third Assignment of Error

"The trial court erred in the splitting of transportation costs to be paid by the appellant and appellee in light of the disparity between household incomes of the appellant and the appellee."

Following a review of the record herein, we find that the trial court erred in its allocation of transportation expenses for visitation. Although R.C. 3109.-051(F)(2) does authorize a court to deviate from its "standard visitation guidelines," a deviation is permitted only pursuant to a consideration of "all" fifteen of

the given factors, which include a consideration of what is in the best interest of the children. R.C. 3109.051(D)(15).

We find no evidence in the record that the court considered the best interest of the children in its allocation of the transportation expenses in this case. We further find the court's allocation unreasonable, and therefore conclude that the court abused its discretion.

The referee in this case determined that appellee "has seventy percent (70%) of the total income of the parties, [and thus] it would be equitable for [appellee] to pay seventy percent (70%) of the transportation costs and for [appellant] to pay thirty percent (30%) of these costs."

It was established at the hearing that appellee's yearly income is $61,000, and appellant's is approximately $13,000. A comparison of the parties' incomes at this point, before any consideration of child support, establishes that appellee has 17.6% of the parties' total income, and appellant has 82.4%. A calculation of child support under the statutory guidelines establishes that the total needed to support the parties' two children on a total income of $74,000 per year is $13,176. A determination of individual child support obligations based upon allotment by the appropriate percentages of the parties' incomes results in an obligation on appellee's part of $10,857 per year, and a support obligation of $2,319 for appellant. These amounts are to be used for the support of the parties' minor children.

It appears that, in prorating the parties' "share" of the transportation expenses, the court subtracted appellee's $10,857 child support obligation from his total income, for a result of $50,143, and added the same to appellant's income for a total income of $23,857, and then proceeded to compare those "incomes." However, the court apparently failed to consider that $13,176 of appellant's new "income" is court-ordered child support, and is an amount to be used solely for the support of the children. Thus, the parties' true incomes, after consideration of both their child support obligations, are $50,143 and $10,681. Comparison of these figures is analogous, of course, to comparison of the parties' incomes before consideration of child support under the guidelines.

By allocating the transportation expenses *after* inclusion of appellee's child support payments in appellant's income, the court, in effect, is ordering part of the children's transportation expenses to be paid by the children themselves, out of their court-ordered child support. We find this result to be unreasonable. See, *e.g., Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142 (unreasonable, arbitrary, or unconscionable error on the part of the trial court constitutes abuse of that court's discretion). Accordingly, we sustain appellant's third assignment of error.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court, and remand the cause to that court for proper calculation of the child support order and further proceedings in accordance with the foregoing opinion and consistent with the statutory and common law of Ohio.

*Judgment reversed*
*and cause remanded.*

BRYANT, J., concurs separately.

SHAW, J., concurs in judgment only.

THOMAS F. BRYANT, Judge, concurring.

I do not share the intuition and supposition of the majority, but concur in the reversal and remand of this action for further proceedings consistent with R.C. 3113.215. I also do not believe it is appropriate for this court to take the apparent position of advocate.

I agree with the holding of *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, that the worksheet provided in R.C. 3113.215(E) or (F) must be utilized when calculating the amount of child support owed by an obligor. Based on the law as set forth in R.C. 3113.215(B)(1) and *Marker*, I would hold simply that this cause should be reversed and remanded in order for the court to calculate appellee's child support obligation according to the worksheet set forth in the statute.

I further note that R.C. 3113.215(B)(3)(d) provides that:

"(3) The court * * * may deviate from the amount of support that otherwise would result from the use of the schedule and the applicable worksheet, through line 18, in cases in which the application of the schedule and the applicable worksheet, through line 18, would be unjust or inappropriate and would not be in the best interest of the child. In determining whether that amount would be unjust or inappropriate and would not be in the best interest of the child, the court may consider any of the following factors and criteria:

" * * * *

"(d) Extended times of visitation or extraordinary costs associated with visitation, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through line 18, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of companionship or visitation granted by court order[.]"

It cannot be determined from the record whether the trial judge considered this provision of the statute. While the majority of this court recognizes this section of the statute, it eliminates judicial discretion and substitutes its own personal philosophy. It is clear that the judge must follow the worksheet to line eighteen before considering the above-quoted portion of R.C. 3113.215. This provision does, however, authorize the judge to deviate from the guidelines in some circumstances involving extended visitations.

I also find the majority's discussion concerning "*[a]ll* visitation schedules" and "the 'typical' visitation schedule" to be unsupported by the record and irrelevant to the issues in this case.

Loc.R. 2.23 of the Hancock County Common Pleas Court is simply a guideline. I can think of no circumstances under which a rule of court could of itself be an "abuse of discretion." Furthermore, without something to indicate how the rule was applied in this case, I would not hold that the rule violates "the purpose and intent of R.C. 3113.215."