[Cite as *Hay v. Shafer*, 2010-Ohio-4811.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

JASON M. HAY,                                      CASE NO. 10-10-10

   PLAINTIFF-APPELLEE,

 v.

BETH A. SHAFER,                                    O P I N I O N

   DEFENDANT-APPELLANT.

**Appeal from Mercer County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 4-2009-133**

**Judgment Affirmed**

**Date of Decision:  October 4, 2010**

**APPEARANCES:**

   *Martin D. Burchfield,* **for Appellant**

   *Thomas Luth,* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-Appellant, Beth A. Shafer ("Beth" or "the mother"), appeals the judgment of the Mercer County Court of Common Pleas, Juvenile Division, allocating parental rights and responsibilities and ordering child support. Beth claims that the trial court abused its discretion when it failed to adopt a shared parenting plan and that it incorrectly calculated the amount of child support to be paid by Plaintiff-Appellee, Jason M. Hay ("Jason" or "the father"). For the reasons set forth below, the judgment is affirmed.

{¶2} Beth and Jason are the parents of a son, Gavin M. Hay, who was born November 11, 2008. The parents were never married to one another but they did live together for a period of time after the child was born. Private genetic testing had been done and the parties stipulated that Jason was Gavin's father. (Apr. 1, 2010 Hearing Tr., p. 6.) The parents currently live within 17 miles of each other.

{¶3} On December 18, 2009, Jason filed a complaint to determine parental rights and responsibilities and, at the same time, he filed a motion for shared parenting requesting that each parent have an equal amount of parenting time with Gavin. On December 23, 2009, Beth also filed a shared parenting plan, although her plan called for Gavin to reside with her the majority of the time, and

Jason would have Gavin every-other weekend and occasionally during the week. Jason would also pay child support to Beth.

{¶4} On April 1, 2010, the trial court held a hearing on the motions and heard the testimony of Beth and Jason, along with the testimony of Beth's step-father and Jason's mother and cousin. All of the testimony indicated that Gavin is a happy, healthy, and well-adjusted child, who is loved and nurtured by both parents as well as Jason's parents and his sister, and Beth's step-father.[1] Both parties are caring and capable parents who love Gavin and have been very much involved in raising him.

{¶5} Beth and Jason lived together in Jason's home in Celina for 8-9 months after Gavin was born, and both parties participated in all aspects of his care. In the latter part of 2009, the parties began to have trouble getting along, so Beth took Gavin and moved into a house with a friend in Maria Stein, Ohio. Both parties maintained safe, clean and appropriate living arrangements for Gavin. Jason continued to be very involved in Gavin's life and would often see him on a daily basis when he picked him up from daycare. When Beth's job and baby-sitting arrangements changed, Jason saw less of Gavin and his time with the child was reduced to every-other weekend and one evening during the week. He testified that there were a few times when he wanted to see Gavin and Beth would

---

[1] Beth was estranged from her mother and she does not permit her mother to visit Gavin.

not let him, and that Beth would not give him the address of Gavin's current baby-sitter.

**{¶6}** Jason filed his motion for a shared parenting arrangement because he wanted both parents to be able to spend an equal amount of time with Gavin. He thought Beth was a good mother and he was not trying to take Gavin away from her; he just wanted to spend more time with his son and be a part of his life. Beth acknowledged that Jason was a good father, but she believed that Gavin was doing well with the current "traditional" visitation schedule, and therefore, it should not be changed.

**{¶7}** On April 23, 2010, the trial court issued a judgment entry naming Jason the residential parent and legal custodian of the child. The trial court awarded each parent an equal amount of parenting time with alternating weeks, from 6:00 p.m. Sunday until 6:00 p.m. the following Sunday. Holidays were to be shared according to the court's local rules. The trial court ordered Jason to pay child support to Beth in the amount of $19.47 per month, plus a 2% processing fee. Jason was to continue to provide private health insurance through his employment as long as it was available at a reasonable cost, with an alternate support amount ordered in the event he ceased providing private health insurance for Gavin.

**{¶8}** It is from this judgment that Beth timely appeals, raising the following three assignments of error for our review.

**First Assignment of Error**

**The trial court erred in failure [sic] to adopt a shared parenting [plan] as requested by both parties in their filings before the court.**

**Second Assignment of Error**

**The trial court erred in determining the time distribution for the child between the parents and abused its discretion in determining the facts of ORC 3109.04.**

**Third Assignment of Error**

**The trial court erred in imputing $27,885 to the father for his income and did not properly explain the rational[e] for deviating from the guidelines calculation for the order of support.**

*First Assignment of Error*

{¶9} In the first assignment of error, Beth complains that the trial court erred by not ordering a shared parenting plan even though both parties requested shared parenting. Beth claims that the trial court abused its discretion in denying shared parenting because it mischaracterized her intention to move to Florida.

{¶10} A trial court has broad discretion in determining whether to order shared parenting. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶48; R.C. 3109.04(D)(1)(b). An appellate court will presume that a trial court's decision regarding child custody is correct and will not reverse the decision absent an abuse of discretion. Id.; *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178. The term "abuse of discretion" means more than a mere error; it implies that the court's attitude is unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶11} R.C. 3109.04(D) sets forth standards and procedures for allocation of parental rights and responsibilities using a shared-parenting plan. Under R.C. 3109.04(D)(1)(a)(i), the trial court may deny a motion for shared parenting and proceed as if the motion had not been made if it determines that such a plan is not in the best interest of the child. In further discussing shared-parenting plans, the statute states:

> **The approval of a plan under division (D)(1)(a)(ii) or (iii) of this section is *discretionary* with the court. The court shall not approve more than one plan under either division and shall not approve a plan under either division unless it determines that the plan is in the best interest of the children. *If the court, under either division, does not determine that any filed plan or any filed plan with submitted changes is in the best interest of the children, the court shall not approve any plan.*** (Emphasis added.)

R.C. 3109.04(D)(1)(b); *Huelskamp*, at ¶49. In order to determine a child's best interests when allocating parental rights, a trial court must consider the non-exclusive list of factors set forth in R .C. 3109.04(F)(1).[2] *Reinhart v. Allen*, 3d Dist. No. 13-08-42, 2009-Ohio-5277, ¶12. Additionally, in determining whether

---

[2] R.C. 3109.04(F)(1) states that the court shall consider all relevant factors, including, but not limited to: (a) the wishes of the child's parents; (b) the wishes of the child, if interviewed in chambers; (c) the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests; (d) the child's adjustment to home, school and community; (e) the mental and physical health of all persons involved; (f) the person more likely to honor and facilitate visitation; (g) whether either parent has complied with court ordered support payments; (h) whether either parent has been involved in the abuse or neglect of a child; (i) whether either parent has denied the other parent's right to parenting time in accordance with an order of the court; (j) whether either parent has established, or is planning to establish, a residence outside of the state.

shared parenting is appropriate, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division R.C. 3109.04(F)(1), the factors enumerated in section 3119.23 of the Revised Code, and additional factors enumerated in R.C. 3109.l04(F)(2). *Clark v. Clark*, 3d Dist. No. 14-06-56, 2007-Ohio-5771, ¶24. The first factor enumerated in R.C. 3109.04(F)(2) is: "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children; ***." Id.

{¶12} Although both Beth and Jason filed shared-parenting plans, the two plans were very different. Beth's plan, although labeled a "shared-parenting plan," more closely followed the typical plan associated with the allocation of one residential parent with a traditional visitation schedule for the other parent. The trial court reviewed all of the relevant factors under R.C. 3109.04(F) as they applied to the facts in this case and came to the following findings and conclusions.

> **The court considered the ability of the parents to cooperate and make decisions jointly with respect to their son and finds that there are definitely issues between the parties that may make it difficult for the parties to make decisions jointly.**
>
> **\* \* \***
>
> **Based on all of the relevant sections of law and the testimony presented, the court finds that while each parent loves and wants to be with their child, that a shared parenting plan is not in the best interest of their child Gavin.**

> **The court has serious concerns about mother's intentions to leave the state of Ohio. The court therefore names father to be the residential parent and legal custodian of the child Gavin.**

(Apr. 23, 2010 J.E., pp. 2-3.)

{¶13} Based upon our review of the record, we do not find that the trial court's decision was unreasonable, arbitrary, or unconscionable. The trial court found that both parties were good parents and allocated them equal time with Gavin. The record supports the trial court's concerns about the parties' ability to cooperate sufficiently in order to make the joint decisions necessary in a shared parenting arrangement. First, the parties' could not even agree upon a joint shared parenting plan. The two plans submitted were significantly different and had major differences in the allocation of parental time. And, although it was clear both parties were interested in what was best for Gavin, they sometimes had different views as to what that would be. There was also testimony that Beth had sometimes limited Jason's access to his son and withheld information concerning her childcare arrangements. We do not find that the trial court abused its discretion when it declined to establish a shared parenting plan.

{¶14} Likewise, we do not find that the trial court abused its discretion when it named Jason as the residential parent. As indicated above, the evidence presented at the hearing and the trial court's judgment entry supported a finding that *both* parties were good parents and neither had any significant problems or factors that would weigh against being named the legal custodian. Therefore, it

was within the trial court's sound discretion to make that determination. See *Dawson v. Dawson*, 3d Dist. Nos. 14-09-8 through 14-09-12, 2009-Ohio-6029, ¶19 ("When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court," citing *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597.)

{¶15} The trial court expressed concerns that Beth might be contemplating leaving Ohio because of the following testimony:

> **Q.      Over the winter, have you made plans to move to Florida?**
>
> **Beth: We had discussed it.**
>
> **Q.      Made two trips there to inspect?**
>
> **Beth: No, I went to Florida to visit family.**
>
> **Q.      When you say "we had discussed it," who is we?**
>
> **Beth: I discussed it with *** my stepfather and my grandpa and my cousins that live in Florida.**

(Hearing Tr. pp. 108-109.)

{¶16} Beth argues that the trial court abused its discretion and misapplied R.C. 3109.04(F)(1)(j). The statute asks a court to consider "whether either parent has established, or is planning to establish, a residence outside of the state." Id. Beth maintains that her "discussions" about moving to Florida did not constitute definitive "plans" to move.

{¶17} However, the trial court did not find that she was definitely planning to relocate; it merely stated that it had serious concerns about her "intentions." The R.C. 3109.04(F) factors are a *non-exclusive* list of considerations; the trial court does not necessarily have to literally match every word in every factor in order to arrive at a decision.

{¶18} The evidence showed that Beth had several relatives in Florida; that she had discussed moving to Florida; that she currently did not have her own permanent residence (Beth was living in the home of a friend); she was no longer employed in her profession; she testified that she was trying to "figure out" what she wanted to do; and she was planning on going back to college. Jason, on the other hand, had lived in the area his entire life; he had owned his own home for several years; his immediate family lived near him and they were very involved in helping care for their only grandson/nephew; and he had a history of working for the same company in his chosen field (except for a brief lay-off period.)

{¶19} While none of the above facts would necessarily constitute proof that one party or another was going to stay in or leave the area, it certainly wasn't unreasonable or arbitrary for the trial court to conclude that there was a *possibility* that Beth might decide to relocate. Based on all of the above, it was not an abuse of discretion for the trial court to name Jason as the custodial parent rather than adopt a shared parenting plan. Beth's first assignment of error is overruled.

*Second Assignment of Error*

**{¶20}** Beth's second assignment of error overlaps many of the facts and points of law that we discussed in our review of the previous assignment of error. Beth asserts that the trial court abused its discretion in the application of the R.C. 3109.04(F)(1) factors when it decided to alter the existing parenting arrangements. Beth maintains that Gavin was doing very well with the way things were and therefore, the trial court should not have made any changes.

**{¶21}** The record reflects that the trial court carefully considered all of the applicable factors in R.C. 3109.04(F)(1) and set forth its findings in the judgment entry. It is true that Gavin was doing very well with Beth as the primary caregiver and Jason having limited "standard" visitation. However, the record also shows that Gavin was well-cared for and thriving when Jason had the opportunity to play a larger role in his life, before Beth moved out and in the period immediately thereafter. The evidence established that both parties were responsible and loving parents. Therefore, the trial court allocated parental rights in a manner that would enable both parents an equal opportunity to fully participate in raising Gavin and give each parent equal access to the child.

**{¶22}** We do not find any evidence that the trial court's decision was not in the best interest of the child. The second assignment of error is overruled.

*Third Assignment of Error*

**{¶23}** In the final assignment of error, Beth challenges the amount of child support that the trial court ordered Jason to pay to her. Beth maintains that the income numbers the trial court used for the child support worksheets were imputed to the parties "without providing any rationale" as to how they were determined.

**{¶24}** Beth claims that the trial court erred when it used $27,885 for Jason's income when the record shows that he had earned $44,000 the previous year. And, since she had lost her nursing job, the trial court should not have imputed $19,500 income to her without a finding that she did not justifiably lose her job. And finally, she asserts that the trial court did not properly explain how it arrived at the support calculations used on the child support worksheets.

**{¶25}** We review child support matters under an abuse of discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Accordingly, we will only reverse a trial court's judgment regarding child support matters if it is unreasonable, arbitrary, or unconscionable. *Blakemore*, supra.

**{¶26}** When issuing an order of child support, the trial court must calculate the amount of support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02; *O'Conner v. O'Conner*, 184 Ohio App.3d 538, 2009-Ohio-5436, 921 N.E.2d 700, ¶9. The guideline amount of child support is rebuttably presumed to be the correct amount of child support due. R.C. 3119.03;

*Green v. Tarkington*, 3d Dist. No. 10-10-02, 2010-Ohio-2165.; *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 141, 601 N.E.2d 496 (referencing same re a prior revision of the statute.) Pursuant to R.C. 3119.22, a court may order a deviation from the rebuttably presumed amount after considering the factors in R.C. 3119.23.

{¶27} Although each parent in this case had the child for 50% of the time, their allocation of parental rights was not a shared parenting plan; Jason was the residential and custodial parent. Cf. R.C. 3119.24 and R.C. 3119.23 (governing an award of child support when there is a shared parenting order). Even when a shared parenting plan has been ordered by the court, the parties are not automatically entitled to a set-off or credit for additional time spent with the children under the plan, as compared with a more traditional visitation schedule. *Pauly v. Pauly*, 80 Ohio St.3d 386, 388-90, 1997-Ohio-105, 686 N.E.2d 1108.

{¶28} The testimony at the hearing established that Jason and Beth each had jobs which paid approximately $44,000 on an annual basis during 2009. Beth, a registered nurse, worked for an assisted living organization earning $22 per hour and was paid for 43 hours a week ($49,192 on an annual basis). Jason worked for a construction company at a rate of $16.50 per hour ($34,320 annually), but was sometimes able to work at jobs paying a higher prevailing wage and, therefore, earned approximately $44,000 in 2009.

{¶29} However, both of the parties' job situations changed in early 2010. Jason was laid off in January and he was not called back to work until March 29th, only three days prior to the hearing. Beth lost her job in February when she claimed that she was unable to get to work due to a level three snow emergency. Therefore, at the time of the hearing, she had just recently started doing office work for her step-father's company out of his home at the rate of $10 per hour for 35-40 hours per week. Beth stated that she was helping her step-father while she was trying to figure out what she wanted to do. She was planning to go back to college and wanted to go to medical school.

{¶30} Based on the changes in both parents' employment situations shortly before the hearing, there was a limited amount of data available from which the trial court could compute their current earnings for the child support worksheet. Contrary to Beth's assertion that the trial court "simply placed two numbers on a worksheet," we find that the trial court's annual income computations for 2010 were taken directly from the facts established by the testimony at the hearing.

{¶31} The trial court computed Jason's salary based on the weeks he worked in January, plus the number of weeks from the time he was recalled until the end of December, and multiplied this by his $16.50 hourly rate. While Jason *may* have the opportunity to earn more by working at prevailing wage jobs in the future, there was no evidence that this was a certainty nor was there any definitive evidence as to his potential earnings. Likewise, the trial court arrived at Beth's

$19,500 income for the year by multiplying the hours she worked as a nurse in early 2010 by $22 per hour, and then computed the remainder of her year's income based on her $10 per hour job for her step-father. Even though Beth was working at a rate less than half of what she had been capable of earning, the trial court did not "impute" any additional income to her.

{¶32} Based on the limited amount of income information available at the time of the hearing, we do not find that the trial court abused its discretion in its determination of the parties' incomes for purposes of completing the child support worksheets.[3] If there is a substantial change of circumstances in the future, the parties may request a modification of the child support order pursuant to R.C. 3119.79.

{¶33} In the second part of her argument under this assignment of error, Beth complains that the trial court deviated from the child support worksheet calculations and failed to properly explain and justify the deviation as required under the statutes and as we recently discussed in our decision in *Green v. Tarkington*, supra, a case that was also heard in Mercer County.[4] Beth

---

[3] We note that on the child support worksheet filed by Beth in December 2009 (before she lost her job and before Jason was laid off), Beth listed Jason's gross income as $33,800 and her gross income as $45,760. We find it somewhat inconsistent that Beth appears to be asking the court to impute Jason's 2009 earnings as his gross income for child support purposes, but not do the same for her.

[4] Our decision in *Green v. Tarkington*, 2010-Ohio-2165, was decided on May 17, 2010, *after* the trial court issued its judgment entry on April 23, 2010. However, the statutory requirements were in effect long before our decision in *Green v. Tarkington*.

"respectfully requests that this case be remanded to the Juvenile Court for a proper child support calculation." (Appellant's Brief, p. 13.)

{¶34} Based upon the calculations that a trial court is required to complete utilizing the "computation worksheet for sole residential parent or shared parenting order" provided in R.C. 3119.022, and using the income figures discussed above, Beth would be obligated to pay Jason approximately $270 per month, as Jason was designated the residential parent. However, pursuant to R.C. 3119.22, a trial court *may* (but is not required to) deviate from the amount calculated if it determines that the amount would be unjust or inappropriate, utilizing the factors set forth in R.C. 3119.23. One of the factors applicable to the facts in this case is "extended parenting time." See R.C. 3119.23(D). Therefore, on line 27 of the child support calculation worksheet, the trial court entered a deviation figure, off-setting each parent's calculated child support obligation against the other to account for the fact that each parent had an equal amount of parenting time with Gavin. This deviation resulted in Jason paying Beth $19.47 per month, instead of Beth paying Jason as indicated above. The trial court also did some calculations utilizing various "shared parenting" deviation "theories" worksheets – even though there was not a shared parenting order in place. One of the various "theories," using calculations applying a 50/50 straight percentage of time formula, also computed a $19.47 monthly child support obligation, with Jason as the obligor.

{¶35} Based upon the fact that each parent is responsible for Gavin for an equal amount of time, and the fact that there is not a great deal of difference between the parties' incomes, we believe that the trial court's child support calculation was a fair and equitable determination. However, although it is perfectly clear from the record what the trial court was attempting to accomplish, and the trial court's results were reasonable and equitable under the specific facts in this case, we agree with Beth's claims that the trial court failed to provide the proper documentation explaining the deviation in its journal entry, as required by R.C. 3119.22.

{¶36} However, we are uncertain as to what "remedy" Beth is seeking since the deviation was very much in her favor.[5] Although the trial court failed to follow the requisite statutory procedures, Beth has not stated how she has been prejudiced by the trial court's actions nor has she alleged that the child support deviation affected her substantial rights. Therefore, we find that the trial court's error was harmless. See Civ.R. 61. "A reviewing court will not disturb a judgment unless the error contained within is materially prejudicial to the complaining party. *** When avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party."

---

[5] Would Beth prefer that we rescind the deviation and require that she pay Jason $270 monthly child support pursuant to the basic guidelines?

(Internal citations omitted.)  *Guertin v. Guertin*, 10th Dist. No. 06AP-1101, 2007-Ohio-2008, ¶13 (finding court's failure to properly include child support worksheet to be a harmless error); *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, 827 N.E.2d 365, ¶17.

{¶37} Beth's third assignment of error is overruled.  Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jnc**