[Cite as *Hartley v. Jones*, 2013-Ohio-2381.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

TIFFANY N. HARTLEY, ET AL.,

    PLAINTIFFS-APPELLANTS,             CASE NO. 5-12-35

    v.

SIDNEY T. JONES,                      O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 21140246

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   June 10, 2013

APPEARANCES:

    *John C. Filkins* for Appellants

    *Timothy A. McGee* for Appellees

**WILLAMOWSKI, J**.

{¶1} Although originally placed on our accelerated calendar, we elect, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.

{¶2} Plaintiff-Appellant, Tiffany N. Hartley, et al., ("Tiffany" or "the Mother"), appeals the judgment of the Hancock County Court of Common Pleas, Juvenile Division, which established parental rights and responsibilities, a visitation schedule, and child support obligations between the Mother and Defendant-Appellee, Sidney T. Jones ("Sidney" or "the Father"). On appeal, the Mother claims that the trial court erred in failing to name her as the sole residential parent and by adopting what she claims is essentially a shared parenting plan. The Mother also claims the trial court erred when it deviated from the child support schedule without a finding that the deviation was in the best interest of the child. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶3} Tiffany and Sidney are the parents of one minor child, Jaden, who was born in May 2011. The parties were never married. In fact, the couple ended their relationship when Tiffany was six months pregnant with Jaden. Sidney claims that he did not know she was pregnant and he did not learn about Jaden until the evening of his birth. (Mag. Dec. Stmt. of Facts, p. 2) Sidney also claims that Tiffany told him and others that he was not Jaden's father and she did not name

him as the father on the birth certificate. (*Id.*) Tiffany denies that she ever told anyone that Sidney was not the father. (*Id.*) Sidney maintains that the first time he was permitted to see Jaden was at the laboratory during genetic testing in July of 2011, although Tiffany claims that she never denied him contact. (*Id.*) The results of the genetic testing indicated that the probability of Sidney's paternity was 99.99% and the parties have stipulated that Sidney is Jaden's father. (*Id.*) The parties have spoken to each other very little since their relationship ended. (*Id.*)

{¶4} This case commenced on September 14, 2011, when the Hancock County Child Support Enforcement Agency ("CSEA") filed a complaint to establish parentage and adopt the administrative child support order for unmarried persons. Sidney, as obligor, was to pay $134.95 per month for child support.

{¶5} On September 26, 2011, Sidney filed a *pro se* motion requesting that shared parenting with an alternating weekly schedule be established; that his child support payments be reduced; that Jaden Hartley's last name be changed to his surname, Jones; that he should be entitled to claim Jaden as a dependent on taxes in alternating years; and, that he have access to Jaden's medical records and other official documents.

{¶6} Tiffany filed a motion requesting that she be designated the residential parent and legal custodian. (Feb. 8, 2012 Mtn.) She also requested child support and the right to claim the dependency exemption for Jaden every year.

{¶7} A hearing was held on the motions on May 24, 2012 before the magistrate. Both parties were present, along with their retained counsel. A representative from CSEA also appeared and both parties stipulated to the information provided by CSEA.

{¶8} The magistrate's decision was filed shortly thereafter on June 5, 2012. The primary issues before the court involved custody, visitation, and child support. Because this was an initial allocation of parental rights, it was not necessary to establish a change of circumstances; the court only needed to consider the factors affecting the best interest of the child under R.C. 3109.04(F). *See Self v. Turner*, 3d Dist. No. 10-06-07, 2006-Ohio-6197, ¶¶ 6-8.

{¶9} The magistrate's decision outlined the relevant statutory factors pertaining to the best interest of the child in detail as they applied to the facts in this case. The magistrate found that, with the exception of one factor, the parties were "equal in this case." (Mag. Dec. p. 6) The magistrate made the following recommendations that are pertinent to the issues in this appeal:

> (c) The Court should find that it is in the best interests of the child that [Tiffany] be named the residential parent of Jaden for school purposes. The Court should further order that each parent should be

considered the residential parent of Jaden anytime that he is in their care. * * *

(d)   The Court should find that it is in the best interests of the child that [Sidney] be entitled to parenting time with the child on a two week rotating basis as follows:  Week One, [Jason] should be entitled to parenting time with the child on Saturday commencing at 7:30 a.m. until the following Thursday at 7:30 a.m.  Week Two, [Sidney] should be entitled to parenting time with the child on Tuesday commencing at 7:30 a.m. until Thursday at 7:30 a.m.  The schedule would then repeat.  This would give Father each Tuesday and Wednesday and Mother each Thursday and Friday.  The parties would then alternate extended weekend parenting periods.

* * *

(Mag. Dec. p. 10)

{¶10} The magistrate also recommended that Sidney be ordered to pay $134.95 month child support from May through September of 2011, for the period of time prior to when the CSEA support orders became effective.  However, commencing with the date of the hearing, May 24, 2012, the magistrate recommended that the court order $0.00 child support should be paid.  This deviation was based upon the extended parenting time Sidney would have with the child, and the fact that Tiffany earned more than twice what Sidney earned ($19,136 and $8,970 respectively, pursuant to the attached child support worksheet dated 09/07/2011; and, $28,329 and $12,324 respectively pursuant to the worksheet dated 05/25/2012, after both parties experienced increases in income).

{¶11} The magistrate also analyzed all of the factors that should be considered when deciding a request to change a child's surname and recommended that the trial court grant Sidney's request to change Jaden's name to Jaden L. Jones. *See In re Willhite*, 85 Ohio St.3d 28, 1999-Ohio-201. The magistrate recommended that Tiffany be entitled to claim the child as a tax dependent based on the fact that Tiffany's salary was so much higher and that she would be most likely to benefit from the tax deduction.

{¶12} Tiffany filed objections to the magistrate's decision, claiming errors in (1) not designating her as the residential parent and Sidney as the non-residential parent; (2) implementing what was essentially a shared parenting plan when not requested, and no plan had been submitted; (3) establishing what was essentially a 5/2 – 2/5 day alternating plan when neither party requested such a schedule; and, (4) ordering a deviation in the payment of child support to zero. After reviewing Tiffany's objections and Sidney's response to her objections, the trial court filed a lengthy decision on October 10, 2012, overruling the objections and finding that the magistrate had properly decided the factual issues and appropriately applied the law.

{¶13} We note that in this October 10th "Judgment Entry" overruling Tiffany's objections, the trial court stated that, "Based upon its de novo review of the transcript, the court has deemed it not necessary to hear additional evidence in

order to issue this ruling." (Emphasis added.) However, there is no evidence in the record that a transcript was ever made or filed. In fact, Tiffany's objections specifically stated that a transcript of the proceedings was not requested because the alleged errors could be discerned from the face of the magistrate's decision and statutory authority. (Doc. #21, 06/18/2012 Objections to Mag. Dec., p. 6). It is well established that a trial court speaks only through its journal entries. *Johnson v. Johnson*, 194 Ohio App.3d 664, 2011-Ohio-3001, ¶ 16 (3d Dist.). Therefore, it is imperative that all journal entries must be an accurate and truthful reflection of what actually occurred, not merely a "boilerplate" rendition. A trial court must independently review the record and make its own factual and legal findings; it must not merely utilize a template stating that it has done so. See *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, ¶ 4 (3d Dist.). Fortunately in this case, as Tiffany indicated, a de novo review of the transcript was not necessarily required in order to decide the legal issues that were raised.

{¶14} On November 8, 2012, the trial court filed its final judgment entry in the matter, essentially adopting the findings and recommendations in the magistrate's decision, with some relevant modifications. The trial court ordered that "Plaintiff, Tiffany N. Hartley, shall be named residential parent of Jaden Lee Jones (Hartley)." (Nov. 8, 2012 J.E., ¶ 3) The trial court also ordered that "it is in the best interest of the child that Defendant [Sidney Jones] be entitled to parenting

time with the child on a two week rotating basis * * *," utilizing the 5/2, 2/5 schedule recommended by the magistrate. (*Id.* at ¶ 4)

{¶15} It is from this judgment that Tiffany now appeals, raising the following two assignments of error for our review.

**First Assignment of Error**

**The trial court erred as a result of its failure to identify [Tiffany] as the sole residential parent, and by its adoption of what is in essence a shared parenting plan.**

**Second Assignment of Error**

**The trial court erred in granting a deviation in child support and failed to find same to be in the best interest of the minor child.**

*Standard of Review*

{¶16} Custody issues are some of the most difficult decisions a trial judge must make. Therefore, those decisions rest within the sound discretion of the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A court's decision regarding an award of custody is subject to reversal only upon a showing of an abuse of that discretion. *Id.*; *Trickey v. Trickey*, 158 Ohio St. 9, 13–14 (1952). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9–10–57, 2012–Ohio–45, ¶ 13, citing *State v. Boles*, 187 Ohio App.3d 345, 2010–

Ohio–278, ¶ 17–18 (2d Dist.), citing Black's Law Dictionary (8 Ed.Rev.2004) 11.

"A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." *Pater v. Pater*, 63 Ohio St.3d 393 (1992).

{¶17} The reason for this standard of review is that the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony. *Davis*, 77 Ohio St.3d at 418. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Id.* at 419.

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *

(Citations omitted.) *Miller*, 37 Ohio St.3d at 74.

{¶18} In applying an abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. *Hay v. Shafer*, 3d Dist. No. 10–10–10, 2010–Ohio-4811, ¶ 14, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, (1989). When reviewing a change of child custody proceedings, an appellate court should be guided by the presumption that trial court's findings were correct. *Miller* at 74.

*First Assignment of Error –*
*Residential Parent vs. Shared Parenting Plan*

**{¶19}** In her first assignment of error, Tiffany maintains that the trial court erred "in not designating her the sole residential parent and legal custodian of the minor child," and complains of the recommendations contained in the magistrate's decision stating that she should be the residential parent "for school purposes." (Appellant's Br. p. 2)  She further complains that the magistrate was seeking to implement a shared parenting plan "even though neither party had filed a request for shared parenting," and no proposed shared parenting plan had ever been filed with the Court pursuant to R.C. 3109.04(g).  (*Id.* at p. 3)

**{¶20}** We find that the issues raised in this assignment of error are without merit for several reasons.  First and foremost, Tiffany is asserting errors concerning the *magistrate's decision*, not the trial court's *final judgment*.  "Claims of trial court error must be based on the actions taken by the trial court itself, rather than the magistrate's findings or proposed decision."  *In re D.E.W.*, 2d Dist. No. 2009 CA2, 2009-Ohio-4116, ¶ 19; *Wuich v. Wuich*, 2d Dist. No. 25481, 2013-Ohio-956, ¶ 22.  The trial court's review of a magistrate's decision is *de novo*. *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, ¶ 4; Civ.R. 53(D).  The trial court must independently review the record and make its own factual and legal findings, although it may rely upon the credibility determinations made by the magistrate.  *Id.*; *Gilleo v. Gilleo*, 3d Dist. No. 10–10–07, 2010-Ohio-

5191, ¶ 47. Once the de novo review is complete, the trial court may adopt, reject, or modify the magistrate's decision. *Tewalt v. Peacock*, 3d Dist. No. 17–10–18, 2011-Ohio-1726, ¶ 31.

**{¶21}** In this case, after conducting an independent review, the trial court issued the final, official judgment entry in this case and unequivocally named Tiffany as the sole residential parent without any of the limiting or confusing language that was contained in the magistrate's recommendation. Therefore, this part of Tiffany's assignment of error is meritless and, therefore, overruled.

**{¶22}** Contrary to Tiffany's assertions, the magistrate did not recommend a shared parenting plan and the trial court did not establish a shared parenting plan.[1] While it is true that the parenting time Jaden will spend with each party has been divided equally, that does not cause the parenting schedule to be considered a shared parenting plan. There is a "difference between shared parenting ('a concept based on a plan') and equal parenting time ('a schedule')." *See Wintrow v. Baxter-Wintrow*, 9th Dist. No. 26439, 2013-Ohio-919, ¶ 5; s*ee also* R.C. 3019.04(G), (K), and (L). This Court recently affirmed a Mercer County case similar to the current case, also between two unmarried parents, wherein the trial court found that both parties were good parents and allocated them equal time with their child. *See Hay v. Shafer*, 3d Dist. No. 10-10-10, 2010-Ohio-4811, ¶ 13. In

---

[1] Furthermore, as the trial court noted when overruling Tiffany's objections, her objection, which included the allegation that "neither party had filed a request for shared parenting," was factually erroneous because Sidney did request shared parenting in his original motion.

*Hay v. Shafer,* trial court had concerns about the parties' ability to cooperate sufficiently in order to make the joint decisions necessary in a shared parenting arrangement. *Id.*

{¶23} The record shows that the magistrate and the trial court considered all of the relevant factors in R.C. 3109.04(F) considering the best interest of the child before deciding upon parental rights and responsibilities. And, as to the allocation of parenting time-companionship, or visitation rights, R.C. 3019.051(A) provides:

> [I]f the court has not issued a shared parenting decree, the court shall * * * make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs * * *. Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child. The court shall include in its final decree a specific schedule of parenting time for that parent.

R.C. 3019.051(A). That is precisely what the trial court has done in this case.

{¶24} Based on the above, we do not find that the trial court abused its discretion in the allocation of parental rights, naming Tiffany the residential parent, or in the establishment of a schedule for parenting time, allowing Sidney, the non-residential parent, to have "frequent and continuing contact" amounting to equal time, with Jaden. The first assignment of error is overruled.

*Second Assignment of Error –*

-12-

*Deviation from Child Support Guidelines*

**{¶25}** Tiffany's second assignment of error asserts that the trial court erred in deviating from the child support schedule and reducing Sidney's support payments to zero. She claims error because (1) the trial court was without authority to implement the shared parenting plan which grants Sidney the additional parenting time upon which the deviation was based, and (2) the trial court never found that the deviation was in the best interest of the child.

**{¶26}** The first part of this assignment of error need not be addressed because, as found in the discussion relating to the first assignment of error, the trial court did *not* implement a shared parenting plan. And, the trial court acted well within its authority and jurisdiction when it granted Sidney more parenting time with Jaden than is set forth the court's standard "Companionship Schedule" (Appendix J). *See* R.C. 3109.051. There is no authority or requirement that a trial court assign parenting time according to a jurisdiction's "standard" parenting schedule. In fact, Hancock County's "Parenting Plan and Companionship Schedule" (Rev. 11/1/10), specifically indicates that it is basically a "fall-back" schedule to be used *if* "the Court Order or Decree specifically "indicates that the Court Schedule is the Order for companionship" or "unless otherwise agreed by the parents." (App. J.) In this case, the trial court did not choose to utilize the standardized "Court Schedule," or leave the scheduling to the discretion of the

parents; it ordered a very specific schedule of visitation designated to allow both parents to have equal parenting time with Jaden.

{¶27} Generally, an appellate court reviews the trial court's decision concerning child support for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). The amount of child support calculated using the child support guidelines and worksheet is rebuttably presumed to be the correct amount of child support. R.C. 3119.03; *Marker v. Grimm*, 65 Ohio St.3d 139 (1992). The trial court may order an amount that deviates from the worksheet amount if such amount would be "unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. The party asserting that a deviation is warranted bears the burden of presenting evidence that proves the calculated amount is unjust, inappropriate, or not in the best interest of the child. *Pahl v. Haugh,* 3d Dist. No. 5-10-27, 2011-Ohio-1302, ¶ 38.

{¶28} R.C. 3119.23 sets forth a list of non-exclusive "factors relevant to granting deviation" that a trial court may consider in determining whether to grant a deviation pursuant to R.C. 3119.22. *See Pauly v. Pauly*, 80 Ohio St.3d 386, 1997-Ohio-105. Factors relevant to this case, and that were discussed in the magistrate's decision and the trial court's October 10, 2012 order (overruling Tiffany's objections), are:

> (D) Extended parenting time or extraordinary costs associated with parenting time, * * *

(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;

R.C. 3119.23.

{¶29} Tiffany also raised this issue in the trial court below in her objections to the magistrate's decision. The trial court did a lengthy and detailed analysis and determined the magistrate's decision had complied with the statutory requirements to permit a deviation, i.e., a determination that the worksheet amount would be unjust and not in the best interest of the child, and the provision of providing specific factual reasons in support of this determination. The trial court's order stated as follows:

> [Tiffany] claims that the Magistrate never determined the deviation was in the best interest of the child. * * * However, the Magistrate considered the best interests of the child when she determined that there should be a deviation in the amount of child support to be paid pursuant to R.C. 3119.22. R.C. 3119.22 allows the court to order a deviation in support if:
>
> "after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3119.22."
>
> The Magistrate did not explicitly list the factors in R.C. 3119.23 in her decision, but it is clear she considered many of them in her analysis. The Magistrate's determination that there should be a deviation in the amount of child support to be paid was based on the fact that [Sidney] would be spending more time with his son. (Mag. Dec. at 10(d).) One of the factors in R.C. 3119.23 is "extended

parenting time." *Id.*; R.C. 3119.23(D). The Magistrate also noted that [Tiffany] earns more income than [Sidney]. *Id.*; R.C. 3119.23(G). R.C. 3119.23 also allows a court to consider "any other relevant factor." *Id.*; R.C. 3119.23(P). The Magistrate's prior consideration of the best interest of the child involved factors relevant to determining the appropriate child support. (*See* Mag. Dec. at 3-7).

(Oct. 10, 2012 J.E.)

{¶30} The record clearly demonstrates that both the magistrate and the trial court determined that a deviation in child support from the statutory worksheet amount was appropriate in this case, within the context of arriving at a decision that was in the best interest of the child. The decisions followed the statutory requirements and included the appropriate worksheet computations along with the specific facts supporting a deviation, as set forth by R.C. 3119.23. However, neither the trial court nor the magistrate used the "magic words" contained in the statute and specifically stated that the calculated worksheet amount "would be unjust or inappropriate and would not be in the best interest of the child." Therefore, we must determine whether the absence of this specific finding in the judgment entry is fatal to this holding and requires remand. The statute states:

If it deviates, *the court must enter in the journal* [1] the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, [2] *its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child*, and [3] findings of fact supporting that determination.

R.C. 3119.22 (Emphasis and enumeration added.)

{¶31} Although we can certainly infer from the record that the trial court found that the amount of child support computed according to the guidelines was inappropriate and not in the best interest of the child, R.C. 3119.22 is quite specific in requiring that "the court must enter in the journal" all *three* of the statutory requirements. We acknowledge that there are situations, concerning *different statutes*, when it has been found that a trial court may not be required to explicitly use the "magic words," although it is usually noted that this is not the best practice. *See e.g.*, *In re. R.C.*, 3d Dist. 16-09-11, 12, 13, 2010-Ohio-3800 (concerning a placement for permanent custody); *Nigro v. Nigro*, 9th Dist. No. 04CA008461, 2004-Ohio-6270, ¶ 6 (re explicit statement of "change of circumstances"); *In re Curtis*, 3d Dist. No. 9-99-74,75, 76, 2000-Ohio-1725 (in permanent custody placement, failure to use specific words stating "the child cannot be placed with either of his parents within a reasonable time"). However, in this case, the language of the statute stating the requirements as to what must be placed in the journal entry is quite specific.

{¶32} The Ohio Supreme Court discussed the mandatory requirements of this statute and found that "the acceptable procedure for ordering an amount of child support which deviates from the amount 'rebuttably presumed' to be the correct amount due is for the court to *fully* comply with the requirements of [the

statute]<sup>2</sup>." (Emphasis sic.) *Marker v. Grimm*, 65 Ohio St.3d 139 (1992). This Court has recognized the importance of this holding and strict compliance in this type of situation, when we held that "any deviation from the child support guidelines *must* be found to be *in the best interest of the children * * *.*" (Emphasis sic.) *Gatliff v. Gatliff,* 89 Ohio App.3d 391, 393-394 (3d Dist.1993). We further stated that the terms of the statute "are mandatory and 'must be followed literally and technically in all material respects.'" *Id.* quoting *Marker v. Grimm*, 65 Ohio St.3d at 143.

{¶33} The trial court failed to follow the literal and technical requirements of R.C. 3119.22 in its judgment entry. Therefore, we sustain this part of the second assignment of error, and remand for further consideration as appropriate under the statute.

{¶34} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued as to the first assignment of error, we affirm the judgment of the trial court. However, we sustain the second assignment of error and remand for further consideration consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

---

[2] R.C. 3119.22 was previously R.C. 3113.215(B)(1). The essential language of the statute relevant to this case has not changed.