OPINION
{¶ 1} Appellant, the father of six minor children, appeals a decision of the Warren County Juvenile Court approving his exwife's relocation to Florida with four of the parties' children.
 {¶ 2} The Warren County Juvenile Court became involved with the family in this case when a complaint was filed alleging the children were abused and dependent. The allegations arose during the midst of a separation and divorce action between the mother and father. Because of the complex nature of this case, it is necessary to review the background and history of this matter before considering resolution of the issue now before this court.
 {¶ 3} The oldest two children are the parties' biological children. The parties adopted two other children and were beginning the process of adopting two additional children when the mother was diagnosed with cancer. After the mother's treatment for cancer, the parties adopted two children from Africa. Shortly after the adoption, the mother's cancer returned.
 {¶ 4} At this point, the parties' marriage began to deteriorate and the father left the home. During this time, various allegations arose between the parties, including allegations that the father sexually abused some of the children. In addition, the mother stated she wanted to rescind her adoption of the two African children as she felt she had never really bonded with them and concerns arose regarding her treatment of the two children. A complaint was filed alleging dependency and abuse of the children.
 {¶ 5} After a hearing, the trial court found three of the children were dependent children, but that the evidence did not sustain an adjudication of abuse. The two African children were found dependent, as the mother admitted that she had not bonded with the children and could not provide for their special needs. The other child who had alleged sexual abuse was also found dependent. During the hearing, one of the African children recanted her prior sexual abuse allegations. The child said that her mother thought her father was touching her and the child believed that it (the alleged sexual abuse) was what her mother wanted her to say. The issue of disposition of the children was set for a later date.[1] The court ordered the family to submit to a psychological evaluation to aid in the disposition.
 {¶ 6} On July 1, 2003, the mother and father entered into an "Agreed Order for Disposition, Allocation of Parental Rights and Responsibilities." The agreed entry was based primarily on the recommendations of the court-ordered psychologist, who recommended that one therapist coordinate treatment of the entire family. In the Agreed Entry, the parties agreed that custody of the two African children would go to the father, with Warren County Children Services retaining protective supervision until further review. The parties also agreed that the mother would have custody of the four children currently residing with her and that the parties would follow the psychologist's recommendations regarding family therapy and gradual reunification of the four children with their father.
 {¶ 7} On August 15, 2001, a little over month after the agreed entry, the mother filed a notice of intent to relocate. In the notice, the mother alleged that her cancer had returned and she wanted to move to Florida with family who could help care for her. The father filed a motion for contempt on August 26, 2003, alleging that the mother had failed to follow the terms of the agreed entry regarding therapy and reunification of the father with the children. On October 22, 2003, the father filed a motion for change of custody based on the mother's intent to relocate to Florida. Hearings were held on October 24 and November 11, 2004 solely on the issue of relocation.
 {¶ 8} The magistrate issued a decision approving relocation to Florida of the mother and the four children in her custody. The father filed objections to the magistrate's decision. He objected to the magistrate's determination that it would be in the children's best interest to relocate to Florida and objected on the basis that the magistrate should have considered the father's custody motion at the same time. The trial court overruled the objections and adopted the magistrate's decision.
 {¶ 9} The father now appeals the trial court's decision allowing the mother to relocate to Florida with four of the parties' children. On appeal, he raises a single assignment of error for our review:
 {¶ 10} "The trial court erred when it permitted the relocation of the parties' children to florida with the mother."
 {¶ 11} Child custody decisions are reviewed under an abuse of discretion standard. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. In considering the father's objections to the magistrate's decision, the trial court found that under R.C. 3109.051(G)(1), it was not authorized to prohibit a parent from relocating. This provision states that when a residential parent intends to move, a notice of intent to relocate must be sent to the court, who must send a notice to the other parent. It further provides that the court, on its own motion or on a motion from the nonresidential parent, "may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child."
 {¶ 12} Other courts have held that, under this provision, the court is not authorized to prohibit a parent from relocating, but is restricted to considering whether it is in the best interest of the child to revise the visitation schedule. See, e.g., Kassavei v. Hosseinipour (June 1, 2001), Trumbull App. No. 2000-T-0132. The trial court followed these cases and stated that it was not authorized to prohibit the mother from relocating, but instead was restricted to considering only whether the best interests of the children dictated a revision of the visitation schedule. As the father in this case is unable to exercise visitation until recommended in the course of family therapy, there was no visitation to revise.
 {¶ 13} We begin our analysis by noting that R.C. 3109.051(G)-(1) applies only if there is no other provision regarding relocation of a parent in the dispositional order. See Williams v. Williams, Trumbull App. No. 2002-T-0101, 2004-Ohio-3992. In this case, the parties' agreed entry states: "A residential parent who intends to change addresses must first file a `Notice of Intent to Relocate' with the Court. A copy of this Notice shall be mailed to the non-residential parent. Any party receiving such a notice may request that a hearing be conducted to readjust the allocation of parental rights and responsibilities." We find this language is broader than the language of R.C. 3109.051(G)(1), in that, on motion of a parent, the court can consider not only the issue of visitation, but whether a change in the allocation of parental rights and responsibilities is warranted.
 {¶ 14} In this case, the father moved for a change of custody on the basis of the mother's intent to relocate to Florida. Considering the language of the parties' agreement above, any consideration of the notice of intent to relocate should have been considered at the same time as all other issues related to the relocation, such as the father's motion for custody.
 {¶ 15} The wisdom of this approach is self-evident, particularly in light of the facts of this case. The trial court found that in considering the intent to relocate, it was not authorized to prohibit the mother from moving to Florida with the children. However, the relocation of the mother and children to Florida appears to be at odds with the psychologist's report and the agreed entry for disposition of the children.
 {¶ 16} For example,[2] the psychologist expressed concerns with the "parental alienation dynamics" in this case. He found that the four children living with the mother have been influenced in their attitudes and feelings towards their father by the fear and anger that the mother has towards him. The psychologist further found that the mother's insight into how her anger has influenced the children's perception of their father is limited and she does not see the importance of having the father involved in the children's lives. He stated that as such, she is not acting in the children's best interest, which is to try and facilitate meaningful contact between the children and their father in a way that would ensure their safety.
 {¶ 17} The psychologist found that court-ordered family therapy with gradual reintegration of the father with the children was in the children's best interest and this was the focus of the agreed entry between the parties. The trial court recognized in its decision overruling objections to the magistrate's decision that if the children are permitted to move to Florida, it will make family therapy difficult, if not impossible, and will prevent frequent regular contact between the father and the children.
 {¶ 18} In its decision, the court stated that it was not concerned at this point as to why family therapy had not yet occurred and that issue would be decided at a later hearing. Presumably, the father's motion for change of custody will also be heard at a later hearing. However, these issues are all interrelated and should be considered together. The paragraph regarding relocation of the residential parent in the agreed entry contemplates a full consideration of all issues in determining whether the parties' allocation of parental rights and responsibilities should be adjusted or changed. Therefore, we find that it was an abuse of discretion for the trial court to consider only visitation issues and to not consider all of the issues and motions impacting on the mother's proposed move to Florida at one time. Given the broad language in the parties' agreement regarding allocation of parental rights and responsibilities on a motion for relocation, the court was not limited only to consideration of the issue of revising visitation.
 {¶ 19} Judgment reversed and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.
Walsh and Valen, JJ., concur.
Valen, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution. At the time this case was submitted, Judge Valen was a duly elected judge of the Twelfth District Court of Appeals.
[1] Because the parties were in the process of a divorce, the juvenile court obtained jurisdiction over the allocation of parental rights and responsibilities of all six children.
[2] Other portions of the psychologist's report and the evidence at the hearing appear inconsistent with a move to Florida being in the best interest of the children. For example, the psychologist found that the mother would have to deal with her own mother's "intense anger" towards the father while working toward reunification of the father with the children, yet a move to Florida would place the children in regular contact with their grandmother, who has yet to deal with this issue. In addition, there was testimony at the hearing that the father's health insurance coverage does not extend to Florida and that the move to Florida was an attempt to divest the Ohio court's of jurisdiction over the children. Other issues were not addressed at all in the testimony or evidence, such as what would be in the children's best interest in light of the mother's apparent terminal prognosis on the return of her cancer.