[Cite as *Delong v. Doster*, 2017-Ohio-7112.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**JARROD J. DELONG,**

    **PLAINTIFF-APPELLEE,**               **CASE NO. 1-17-05**

    **v.**

**ASHLEIGH M. DELONG (NKA DOSTER),**      **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR 2011 0298**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: August 7, 2017**

**APPEARANCES:**

    *Anne Harvey* **for Appellant**

    *Aaron Bensinger* **for Appellee**

Case No. 1-17-05

**ZIMMERMAN, J.,**

{¶1} Defendant-appellant, Ashleigh DeLong, nka Doster, ("Ashleigh") brings this appeal from the January 20, 2017 judgment entry of the Allen County Common Pleas Court, Domestic Relations Division, granting Plaintiff-appellee, Jarrod DeLong ("Jarrod") shared parenting of the parties' minor child, Logan. On appeal, Ashleigh challenges the trial court's: (1) award of shared parenting; (2) its child support determinations; and (3) its finding of contempt.

*Relevant Facts and Procedural History*

{¶2} Ashleigh and Jarrod were married on October 22, 2005. (Doc. 1). One child, Logan, was born during their marriage. (*Id.*). Jarrod filed his complaint for divorce on May 20, 2011 in the Allen County Common Pleas Court, Domestic Relations Division. (*Id.*). At the time of the filing, Ashleigh resided in Delphos and Jarrod lived in Lima.

{¶3} The final divorce hearing was held on October 18 and 21, 2011, and resulted in the trial court's magistrate recommending that Ashleigh be designated the residential parent of Logan, with Jarrod receiving visitation pursuant to the trial court's local rule. (Doc. 58). Also set forth in the final divorce decree was the relocation notice pursuant to R.C. 3109.051(G). (Doc. 59). Neither party appealed the original divorce decree.

**{¶4}** On August 3, 2015, Ashleigh filed a Notice of Intent to Relocate (to Leipsic, Ohio) with the trial court and on August 7, 2015, she amended her notice. (Docs. 86, 87). Jarrod was served with Ashleigh's notice of intent to relocate on August 18, 2015, (Doc. 89) and filed an objection to it the next day. (Doc. 88). Ashleigh relocated to Leipsic on September 1, 2015. Thereafter, Jarrod filed a Motion to Modify Parental Rights and Responsibilities with the trial court on September 10, 2015. (Doc. 91). The trial court scheduled the motion for mediation and, after such mediation failed, a guardian-ad-litem was appointed. (Docs. 95, 104). In its mediation order of October 7, 2015, the trial court ordered Ashleigh *not* to relocate "at this time". (Doc. 95).

**{¶5}** On December 14, 2015 Jarrod filed a motion for contempt against Ashleigh because she moved to Leipsic with Logan. (Doc. 108). Further, on March 16, 2016, Jarrod filed a proposed shared parenting plan. (Doc. 118).

**{¶6}** A hearing was held in the trial court on April 21 and 22, 2016 to address all pending matters. On June 8, 2016, the trial court's magistrate issued a decision finding Ashleigh in contempt for relocating to Leipsic, and finding that shared parenting was in the best interest of Logan. (Doc. 136). On June 22, 2016, Ashleigh objected to the magistrate's decision, specifically objecting to the guardian-ad-litem's report and the implementation of shared parenting. (Doc. 138). The trial court filed an order affirming the magistrate's decision on January 6, 2017 (Doc.

Case No. 1-17-05

158), followed by its Judgment Entry adopting the shared parenting plan on January 20, 2017. (Doc. 159).

{¶7} Ashleigh filed her notice of appeal on February 6, 2017 and raises seven assignments of error for our review. (Doc. 162). For ease of discussion, we will first address Ashleigh's first, second, third and fourth assignments of error together.

*Assignment of Error No. I*

**THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING A SUBSTANTIAL CHANGE IN THE CIRCUMSTANCES OF THE CHILD OR CUSTODIAL PARENT**

*Assignment of Error No. II*

**THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT A CUSTODY MODIFICATION SERVED THE CHILD'S BEST INTERESTS**

*Assignment of Error No. III*

**THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE HARM CAUSED BY THE MODIFICATION IS OUTWEIGHED BY THE ADVANTAGES FROM THE MODIFICATION**

*Assignment of Error No. IV*

**THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE**

*Assignment of Error No. V*

**THE TRIAL COURT COMMITTED PLAIN ERROR BY IMPUTING INCOME TO MOTHER BASED UPON HER EARNINGS IN 2014**

*Assignment of Error No. VI*

**THE TRIAL COURT COMMITTED PLAIN ERROR IN TERMINATING THE CHILD SUPPORT ORDER AND REQUIRING A REFUND**

*Assignment of Error No. VII*

**THE COURT ERRED IN FINDING THE MOTHER IN CONTEMPT REGARDING HER NOTICE OF RELOCATION**

*First, Second, Third and Fourth Assignments of Error*

{¶8} In her first, second, third and fourth assignments of error, Ashleigh argues that the trial court abused its discretion by finding that a change in circumstances occurred and that such change in circumstances was not enough to modify the existing order allocating parental rights and responsibilities. Ashleigh further contends that the trial court's finding of a change in circumstances is against the manifest weight of the evidence.

*Standard of Review*

{¶9} Even though Ashleigh has styled these assignments of error as being both against the manifest weight of the evidence and an abuse of discretion, we review custody determinations on an abuse of discretion standard only. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). In *Davis*, the court stated "[w]e are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * * such a decision will not be

reversed absent an abuse of discretion". *Id*., citing *Miller v. Miller*, 37 Ohio St.3d 71 (1988). Therefore, the standard of review we will use to address these assignments is abuse of discretion.

**{¶10}** A trial court has discretion when it allocates parental rights. *Miller, Id*. A trial court abuses its discretion in allocating parental rights when its decision is not "supported by a substantial amount of credible and competent evidence." *Fricke v. Fricke*, 3d Dist. Allen No. 1-06-18, 2006-Ohio-4845, citing *Davis, Id*.; *Bechtol v. Bechtol*, 49 Ohio St.3d 21, syllabus. "An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable." *Brammer v. Meachem,* 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶11}** The reason for this standard of review is that the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony. *Davis*, *supra*. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Id*. at 419.

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *

(Citations omitted). *Miller*, *supra*.

**{¶12}** In applying an abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. *Hay v. Shafer*, 3d Dist. No. 10-10-10, 2010-Ohio-4811, ¶ 14, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989).

*Standard for Modifying a Prior Decree Allocating*
*Parental Rights and Responsibilities*

**{¶13}** R.C. 3109.04(E)(1)(a) governs the modification of a decree allocating parental rights and responsibilities and states:

> **The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> **\* \* \***
>
> **The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

**{¶14}** Thus, a trial court may modify an allocation of parental rights and responsibilities only if the court finds 1) that a change of circumstances has occurred

since the last decree; 2) that modification is in the best interest of the child; and 3) that the advantages of a modification outweigh the potential harm to the child. *Beaver v. Beaver*, 143 Ohio App.3d 1, 9 (2001).

*Analysis*

*Change in Circumstances*

**{¶15}** In her first assignment of error, Ashleigh asserts that the trial court abused its discretion by finding that a substantial change in the circumstances of the child or herself, as the residential parent, had occurred in this case warranting modification of the allocation of parental rights and responsibilities of Logan. She argues the changes the trial court considered did not involve her or Logan, but only changes regarding Jarrod, the non-custodial parent.

**{¶16}** While a change in a parent's situation can sometimes effect the child's well-being, "[i]t is not sufficient for the moving party to merely show that he can provide a better environment than the environment provided by the parent with custody." *Wyss v. Wyss*, 3 Ohio App.3d 412, (1982). Thus, a change in circumstances for the non-residential parent is generally irrelevant. *Morgan v. Morgan*, 4th Dist. Highland No. 06CA15, 2006-Ohio-6615. In fact, R.C. 3109.04(E) specifically limits a change of circumstances to situations involving "the child, the child's residential parent, or either of the parents subject to a shared parenting decree". *See* R.C. 3109.04(E)(1)(a).

{¶17} We agree with Ashleigh's argument that the remarriage of Jarrod and the subsequent birth of his daughter do not, on their own, constitute a change in circumstances. However, taking into consideration the testimony of each witness, and the evidence produced at the hearing, the trial court found "that there has been a substantial change of circumstances in the residential parent and in the minor child * * *". (Doc. 136, p. 18).

{¶18} "A change of circumstances is a starting point requirement intended to provide some stability to the custodial status of the child." *Davis*, *supra*, citing *Wyss*. However, appellate courts "must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it necessary for the best interest of the child." *Davis*, at 420-421. Thus, we are required to give a trial court's decision regarding a change in circumstances the utmost discretion. A trial court is limited to the extent that a change in circumstances cannot be based on a slight or inconsequential change; it must be one of substance. *Id*. at 418. Not only must the change in circumstances be of consequence, but it also must relate to the child's welfare. *Beaver*, *supra*.

{¶19} In this case, the trial court found the following facts resulted in a change in circumstances that warranted modification: 1) Ashleigh's relocation to Leipsic; 2) the additional drive time for visitation; 3) the remarriage of both parents;

4) the addition of new siblings in each home; and 5) Logan's age. Thereafter, the trial court found as follows:

> **The Court would find the total accumulation of these factors, the change in the dynamics of the family structure of each of these parties, the increase of age of the child and the additional distance on top of all of those facts would certainly constitute a change of circumstances sufficient for this Court to examine the allocation of parental rights and responsibilities and make a determination as to what may be in the best interest of Logan currently.** (Doc. 158).

{¶20} The trial court, sitting as the trier of fact, was in the best position to evaluate the minor child's situation and the changes that occurred as a result of these circumstances. In our review of the record, we find nothing to indicate that the trial court abused its discretion by determining that a change in circumstances occurred regarding Logan and Ashleigh. Thus, we find Ashleigh's first assignment of error lacks merit and is overruled.

*Best Interest Factors Under R.C. 3109.04(F)(1)*

{¶21} In her second assignment of error, Ashleigh argues that the trial court abused its discretion in finding a custody modification served the child's best interests. Specifically, she contends that the trial court erred with its finding that "she would do anything to stop the relationship between Jarrod and Logan", and by minimizing Jarrod's past domestic violence charge. Ashleigh further contends that the lack of cooperation and communication between her and Jarrod does not support a modification of the prior parenting decree.

**{¶22}** After finding that a change of circumstances exists, the trial court next must consider whether the modification would serve the child's best interest. "* * * subsections of [R.C. 3109.04] spell out ten factors that the court shall consider to determine the best interest of the child, and five more factors to determine whether shared parenting is in the child's best interest." *August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶23, citing R.C. 3109.04(F)(1) and (2). Those factors include the following:

> **(1) In determining the best interest of a child pursuant to this section, * * *, the court shall consider all relevant factors, including, but not limited to:**
>
> **(a) The wishes of the child's parents regarding the child's care;**
>
> **(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;**
>
> **(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**
>
> **(d) The child's adjustment to the child's home, school, and community;**
>
> **(e) The mental and physical health of all persons involved in the situation;**
>
> **(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation or companionship rights;**
>
> **(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that**

**parent pursuant to a child support order under which that parent is an obligor;**

**(h)   Whether either parent previously had been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused an abused child or a neglected child, previously has been determined to be a perpetrator or the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i)   Whether the residential parent * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

**(2)   In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, * * *, and all of the following factors:**

**(a)   The ability of the parents to cooperate and make decisions jointly, with respect to the children;**

**(b)** **The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;**

**(c)** **Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;**

**(d)** **The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;**

**(e)** **The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.**

{¶23} In our review of the record, we find that the above factors were analyzed by the trial court, specifically under 3109.04(F)(1)(a)-(j), revealing the following: under factor a) Ashleigh desired to be designated as the residential parent while Jarrod requested his proposed shared parenting plan be adopted; under factor c) that Logan has good relationships with both parents, step-parents and siblings; under factor d) that Logan has no established ties to either parent's home or community and had recently changed schools due to mother's relocation; under factor e) there were no concerns regarding the mental or physical health of either parent, step-parent or of Logan; under factor f) that both parents would honor court ordered parenting time; under factor g) that no arrearage of child support was present; under factor h) that neither party has been convicted or plead guilty to a criminal offense resulting in Logan being found to be an abused or neglected child. However, there was reference to an act of domestic violence between Ashleigh and

Jarrod. There was also a reference in the record that Jarrod spanked Logan during a wrestling match. And under factor i) that neither party had denied parenting time to the other. (Doc. 158).

{¶24} In addition to these findings (under R.C. 3109.04(F)(1)(a)-(j)), the trial court further considered R.C. 3109.04(F)(2)(a)-(e) and determined the following as to the proposed shared parenting plan: under factor a) Ashleigh and Jarrod have issues making joint decisions regarding Logan; under factor b) that both Ashleigh and Jarrod have the ability to encourage love, affection and contact between Logan and the other parent; under factor c) that there was no history of child abuse; under factor d) that the parties live within a close enough proximity to one another for shared parenting to work; and under factor e) that the guardian ad litem recommended that the shared parenting plan, proposed by Jarrod, be adopted. (Doc. 158).

{¶25} The trial court, having considered all the factors under R.C. 3109.04(F)(1)(a)-(j) and 3109.04(F)(2)(a)-(e), determined that the shared parenting plan recommended by the magistrate was, in fact, in Logan's best interest. In our review of the record, we find that the trial court did not abuse its discretion as competent and credible evidence exists, as set forth above, supporting that a modification of the prior allocation of parental rights and responsibilities and adopting the proposed shared parenting plan was in the best interest of Logan.

{¶26} Accordingly, Ashleigh's second assignment of error is overruled.

*Advantages of Modification Outweigh Potential Harm*

{¶27} Ashleigh argues in her third assignment of error that the trial court abused its discretion by finding that the advantages of a modification outweigh the potential harm to Logan. We disagree.

{¶28} In the case *sub judice*, the trial court found that by *not* adopting the shared parenting plan would likely cause harm to Logan. In its January 6, 2017 Order Affirming Magistrate's Decision, the trial court stated as follows:

> **"Ashleigh objects and indicates it is adopted just to provide convenience for Jarrod, however that could also be phrased as to avoid the additional inconvenience that Ashleigh, by her move, has created for the relationship of Logan and Jarrod.**
>
> **Too often parties get concerned with what they refer to as 'my' time instead of looking at the parenting situation as being the time of the child. That time of the child needs to be shared with the parents in the best manner they can. There are obviously occasions and situations where it would not be in the child's interest to spend as much time as the child could with each parent, but there has not been sufficient establishment in this particular case to indicate Logan should not spend as much as he can with each of his parents in an appropriate environment.**
>
> **This also means that each of the parties must exercise their time with the child and their relationship with the other party in a mature, thoughtful, cooperative manner that is conducive to establishing an appropriate environment to teach Logan understanding, cooperation and consideration, rather than manipulation and selfishness. The parties are evolving with their new relationships and families and while demonstrating some of their old negative tendencies are also showing some positive signs of cooperation. The Court is fearful that not adopting the shared**

**parenting plan may work to limit this progress and unnecessarily limit the time Logan can utilize with both parents."** (Doc. 158).

{¶29} Thus, we find the trial court, in its independent review of the objections, analyzed the harm of modification (to Logan) and did not abuse its discretion by overruling the objections and by adopting Jarrod's shared parenting plan. Accordingly, we overrule Ashleigh's third assignment of error.

*Manifest Weight*

{¶30} Ashleigh contends in her fourth assignment of error that the trial court's decision is against the manifest weight of the evidence.

{¶31} As we stated above, we review custody determinations on an abuse of discretion standard only. *Davis*, *supra*. And because we have determined that competent and credible evidence support the trial court's determination, we need not analyze Ashleigh's fourth assignment of error, and such is overruled.

***Fifth Assignment of Error***

{¶32} Ashleigh's fifth assignment of error addresses the imputation of child support. Specifically, Ashleigh argues that the trial court erred by imputing her income, for purposes of calculating a new child support order, by using her 2014 earnings.

*Standard of Review*

{¶33} Although we would normally review a child support order under an abuse of discretion standard, however, since Ashleigh failed to object to the

magistrate's decision as to child support, we are now limited to review whether the trial court's determination amounted to plain error. *Townsend v. Phommarath*, 10th Dist. Franklin No. 10AP-598, at paragraph 1 of the syllabus, 2011-Ohio-1891. Civ.R. 53(D)(3)(b)(iv) provides:

> ***Waiver of right to assign adoption by court as error on appeal.*** **Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).**

{¶34} In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 1997-Ohio-401, the Supreme Court of Ohio addressed the application of the plain error doctrine in civil matters, stating "[i]n applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice". Thus, "appellate courts must proceed * * * only * * * where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself". *Unifund CCR Partners v. Hall*, 10th Dist. Franklin No. 09AP-37, 2009-Ohio-4215, ¶ 22, quoting *Goldfuss* at 121. "Indeed, the plain error doctrine implicates errors in the judicial process where the error is clearly apparent on the face of the record and is prejudicial to the appellant". *Skydive Columbus*, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220 (1985).

*R.C. 3119.01(C)(5) and R.C. 3119.01(C)(11)*

R.C. 3119.01(C)(5) provides:

**(5)** **"Income means either of the following:**

**(a)** **For a parent who is employed to full capacity, the gross income of the parent;**

**(b)** **For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.**

R.C. 3119.01(C)(11) defines potential income as follows:

**(11)** **"Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:**

**a)** **Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:**

**i)** **The parent's prior employment experience;**
**ii)** **The parent's education;**
**iii)** **The parent's physical and mental disabilities, if any;**
**iv)** **The availability of employment in the geographic area in which the parent resides;**
**v)** **The prevailing wage and salary levels in the geographic area in which the parent resides;**
**vi)** **The parent's special skills and training;**
**vii)** **Whether there is evidence that the parent has the ability to earn the imputed income;**
**viii)** **The age and special needs of the child for whom child support is being calculated under this section;**
**ix)** **The parent's increased earning capacity because of experience;**

> **x)** **The parent's decreased earning capacity because of a felony conviction;**
>
> **xi)** **Any other relevant factor.**
>
> **b)** **Imputed income * * ***

*Analysis*

**{¶35}** In considering Ashleigh's fifth assignment of error whether the trial court improperly determined her income (for purposes of calculating her child support obligation), we note that "R.C. 3119.01(C)(11)(a) authorizes a court to impute income to a parent who the court finds is voluntarily underemployed, for purposes of calculating child support." *Breedlove v. Breedlove*, 4th Dist. Washington No. 08CA10, 2008-Ohio-4887, ¶ 14. "[W]hether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. * * *" *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus.

**{¶36}** In calculating child support, a trial court must determine the annual income of each parent. For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent". R.C. 3119.01(C)(5)(b). R.C. 3119.01(C)(11) provides the definition of "potential income", which is set forth above.

**{¶37}** Before a trial court can impute income to a parent, it must first find the parent is voluntarily unemployed or underemployed. *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶13. In deciding if an

individual is voluntarily underemployed "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned". *Woloch v. Foster*, 98 Ohio App.3d 806, at 811.

**{¶38}** Ashleigh asserts that the trial court committed plain error by imputing income to her based upon her 2014 earnings. She contends that her former employer lost its contract, leaving her unemployed. We disagree.

**{¶39}** In our review of the record, we find that Ashleigh's lack of employment was primarily associated with her *voluntary* decision to be a stay at home mom after the birth of her twins (with her new spouse) in lieu of working full time. When questioned, Ashleigh testified as follows regarding this issue:

Q.  (Mr. Mansfield)   Are you currently employed?

A.  (Ashleigh)   No.

Q.  Um after your pregnancy leave, uh will you take employment?

A.  As of right now I'm a stay at home mother. Um after um if it has anything to do with my husband, he would like me to stay home longer. However, um my career is very important to me and if I do go back to work I will probably go PRN that way I can work it around the children's schedule and the family life.

Q.  What is uh your educational background?

A.  I am currently an LPN and I have two um state licenses.

(Tr., Day 2, P. 2-3).

-20-

and

> Q. (Mr. Mansfield) Okay. When did you start unemployment?
>
> A. I started unemployment at the end of November. November 20th.
>
> Q. Of 2015?
>
> A. Of 2015. Yes.
>
> Q. Okay. That due to your pregnancy?
>
> A. Uh partially it was due to the pregnancy. Partially it was also due to the contract wasn't re-signed in Fort Wayne. Um I was able to commute – possible. But with the pregnancy, talking to my OB doctor, he didn't feel it was necessary to. So I took the severance package.
>
> Q. Uh you're not employed at this time then?
>
> A. No.

(Tr., Day 2, P. 5).

**{¶40}** Thus, competent and credible evidence exists in the record to support the trial court's determination that Ashleigh's decision *not* to work was by her choice. Accordingly, we find the trial court reviewed and considered the appropriate statutory factors and its determination that Ashleigh was voluntarily unemployed was not in error.

**{¶41}** Regarding Ashleigh's complaint as to the income the trial court used in determining whether child support should be awarded pursuant to the shared

parenting plan, we find the trial court considered the statutory factors, relying upon R.C. 3119.019(C)(11)(a)(i) to impute "potential income" to Ashleigh. In the case *sub judice*, the trial court chose to impute Ashleigh's lowest single year income earned as her potential income, as opposed to an average, from her previous work years. This is evidenced by Ashleigh's testimony:

> Q.   (Mr. Mansfield)   Okay. What are those?
>
> A.   (Ashleigh)   Um my income taxes.
>
> Q.   For what years?
>
> A.   Um, 2013 and it looks like 2014 and 2015.
>
>         * * *
>
> Q.   Okay. And uh how much did you earn in 2013?
>
> A.   In 2013 my wages – my salary was uh thirty-six thousand, eight hundred seventy-nine dollars.
>
> Q.   Okay. In 2014? Did you have any other income in 2013?
>
> A.   Um 2013, no.
>
> Q.   Okay. 2014 were you employed?
>
> A.   Yes.
>
>         * * *
>
> Q.   And what were your earnings that year?
>
> A.   Thirty-five thousand, one hundred and sixty-three dollars.
>
> Q.   Okay. Any other earnings that year?

A.    No.

*  *  *

Q.    Excuse me.  2015?

A.    Um yes.

Q.    And were you employed?

A.    Uh half of the year I was employed at the Allen County Sheriff's Department.  Um I then resigned there when I was offered a promotion and a job with Quad Medical.

Q.    Okay.  And between those two jobs, uh what did you earn that year?

A.    Forty-one thousand, three hundred and ninety-six dollars.

Q.    any other income besides those two jobs?

A.    Uh the unemployment on here.

(Tr., Day 2, P. 3-5).

{¶42} Thus, in our review of this assignment, we find Ashleigh's argument unpersuasive.  As evidenced by this testimony, Ashleigh's income for 2013 was $36,879, 2014 was $35,136 and 2015 was $41,396.  The trial court elected to impute an amount less than Ashleigh's 2014 income for the child support worksheet (see Doc. 159, Exhibit 1).  Pursuant to R.C. 3119.01(C)(11)(a)(i), the trial court was proper in imputing income nearly identical to Ashleigh's 2014 income as her "potential income" herein.  Thus, competent and credible evidence exists in the

record to support the trial court's imputation of $35,095 to Ashleigh as such amount was based upon her realistic earning ability.

{¶43} Accordingly, Ashleigh's fifth assignment of error is overruled.

### *Sixth Assignment of Error*

{¶44} In her sixth assignment of error, Ashleigh contends the trial court committed plain error in terminating the prior order of child support and ordering a refund to Jarrod of his overpaid child support. More specifically, by adopting Jarrod's shared parenting plan, the trial court was required to issue a new child support order. In doing so, the trial court determined, as evidenced by its new support worksheet (Doc. 159, Exhibit 1), that neither party owed a duty of support. Thus, the trial court terminated the prior support order and ordered Ashleigh to "return the full amount on her child support card" and "the balance due and owing shall be paid at $100.00 per month" to Jarrod. (Doc. 159).

### *Standard of Review*

{¶45} In appellant's fifth assignment of error we declined to address appellant's argument (of imputing income) under an abuse of discretion, the normal review of child support decisions, because the appellant failed to object to such imputation of the trial court. However, in this assignment of error appellant wasn't able to object because the trial court issued the orders, not the magistrate. Thus, we reject using plain error as the standard of review as child support decisions are

within the discretion of the trial court and will not be disturbed without an abuse of discretion. *Marek v. Marek*, 158 Ohio App.3d 750, 2004-Ohio-5556, citing *Rock*, *supra*, at the syllabus. An abuse of discretion "implies the court's attitude is unreasonable, arbitrary or unconscionable". *Marek*, quoting *Blakemore*, *supra*.

*Analysis*

**{¶46}** The amount of child support ordered by the trial court pursuant to the basic child support schedule and worksheet is "rebuttably presumed to be the correct amount of child support". R.C. 3119.03. The trial court is permitted to deviate from the basic child support schedule if it finds that basic child support would be "unjust or inappropriate, and would not be in the best interest of the child". *See* R.C. 3119.79(C); 3119.22. In deviating from basic child support, the court must examine the factors found in R.C. 3119.23, which included "[s]ignificant *in-kind contributions* from a parent". R.C. 3119.23(J) (emphasis added).

**{¶47}** As evidenced in the record, the trial court, in its journal entry, considered the parties' in-kind contributions when determining child support, stating:

> **"Child support shall cease and terminate for both parties effective June 1, 2016. No further support shall be ordered and this being in the best interest of the child and a deviation is appropriate based on in kind contributions of the parties."** (Doc. 159).

The trial court also found:

> **"There is an overpayment of child support. Defendant shall return the full amount on her child support card. The balance due & owing shall be paid at $100 per month."** (Doc. 159).

{¶48} As such, we find the trial court properly addressed the factors under R.C. 3119.23 and did not abuse its discretion by considering the in-kind contributions made by each party in determining that neither Ashleigh or Jarrod needed to pay support. Because no new support order was issued, an overpayment existed as to the previous child support order. Thus, a refund was due Jarrod, which we find proper.

{¶49} We further note, as to this assignment of error, that appellant's brief (at page 17) contains just one sentence in support of this assignment of error and contains no argument or authority for us to review. "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *State ex re. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94.

{¶50} Accordingly, Ashleigh's sixth assignment of error is overruled.

### *Seventh Assignment of Error*

{¶51} In her seventh assignment of error Ashleigh argues that the court erred in finding her in contempt because she moved to her new address without court permission. Specifically, Ashleigh argues that she complied with all of the trial

court's requirements regarding her relocation and that the trial court exceeded its authority by finding her in contempt for moving.

*Standard of Review*

**{¶52}** Before analyzing the merits of this assignment of error, we note that Ashleigh failed to object to this matter when she objected to the magistrate's decision. As we stated above, Civ.R. 53(D)(3)(b)(iv) provides:

> ***Waiver of right to assign adoption by court as error on appeal.*** **Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).**

**{¶53}** Accordingly, since Ashleigh failed to object to the magistrate's decision, we are bound to review this assignment of error under the plain error standard. See *McBroom v. Loveridge*, 6th Dist. Lucas No. L-05-1391, 2006-Ohio-5908, ¶ 14. *Goldfuss, supra*, addresses the applicability of the plain error doctrine to appeals of civil cases in which the Supreme Court of Ohio stated:

> **"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."** *Id.,* at the syllabus.

*Analysis*

**{¶54}** In our review of the record, we find the standard relocation language, pursuant to R.C. 3109.051(G), is contained in the parties' May 4, 2012 Judgment Entry / Decree of Divorce. (Doc. 59).

**{¶55}** R.C. 3109.051(G), which deals with the requirements of a residential parent intending to relocate, states, in its pertinent part:

> **If the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. * * * Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.**

**{¶56}** While the express terms of R.C. 3109.051(G) permits a trial court to schedule a hearing "to determine whether it is in the best interest of the child to revise the parenting time schedule for the child", the statute does not give the trial court the authority to prevent the residential parent from relocating with the child. *In re T.M.*, 161 Ohio App.3d 638, 2005-Ohio-3083, ¶11-12; *Harris v. Harris*, 9th Dist. Lorain No. 06CA009056, 2007-Ohio-3123, ¶ 6.

**{¶57}** In the case *sub judice*, Ashleigh relocated prior to the trial court's issuance of its order restricting her to move. Thus, the only valid provision spelled

out by the trial court regarding relocation was that in its Judgement Entry / Decree

of Divorce, which reads as follows:

> **RELOCATION NOTICE: Pursuant to Ohio Revised Code Section 3109.051(G), the parties are notified as follows:**
>
> **If the residential parent intends to move to a residence other than the residence specified in the court order, the residential parent shall file a notice of intent to relocate with this court, addressed to the attention of the relocation officer. Unless otherwise ordered pursuant to R.C. Sections 3109.051(G)(2), (3), and (4), a copy of such notices shall be mailed by the court to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.** (Doc. 59).

{¶58} Thus, the notice contained in the parties' divorce decree placed no restriction upon Ashleigh's ability to relocate with the couple's minor child. In fact, it merely required her, as the residential parent, to "file a notice of intent to relocate with this court". As a result, and under the facts of this case, the trial court lacked the authority to restrict Ashleigh from relocating. Instead, pursuant to R.C. 3109.051(G)(1), the trial court can only schedule a hearing "to determine whether it is in the best interest of the child to revise the parenting time schedule for the child".

{¶59} In order for plain error to exist, "* * * reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest

-29-

miscarriage of justice". Thus, "appellate courts must proceed * * * only * * * where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself". *Unifund CCR Partners*, *supra*, quoting *Goldfuss*.

{¶60} In our review of this assignment, we find that the trial court's order restricting Ashleigh from relocating was journalized after she relocated. Thus, the decision finding her in contempt for relocating was contrary to law and constitutes plain error. As such, the finding of contempt by the trial court must be reversed.

{¶61} Accordingly, Ashleigh's seventh assignment of error is sustained and the trial court's contempt finding is vacated.

{¶62} Having found no error prejudicial to Ashleigh herein in the particulars assigned and argued as to the first, second, third, fourth, fifth and sixth assignments of error, we affirm in part the judgment of the trial court. However, we sustain the seventh assignment error as stated above, reverse in part the judgment of the trial court, and vacate its finding of contempt against Ashleigh.

**Judgment Affirmed in Part,**
**Reversed in Part and**
**Cause Remanded**

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**